384 So.2d 687 (1980)
STATE of Florida, Appellant/Cross-Appellee,
v.
David Scott CLARK, Appellee/Cross-Appellant.
No. 79-2386.
District Court of Appeal of Florida, Fourth District.
May 21, 1980.
Rehearing Denied July 2, 1980.
*688 David H. Bludworth, State's Atty. and William B. King, Asst. State's Atty., West Palm Beach, for appellant/cross-appellee.
Richard W. Springer, Edward A. Garrison, and Gary S. Israel of Kohl, Springer, Springer & Garrison, Palm Springs, for appellee/cross-appellant.
BERANEK, Judge.
The case below is a first degree murder prosecution. The indictment charges that the defendant killed Lynn Lizer on December 24, 1978, by strangulation or by inflicting blows to the head with an ax. The State appeals a pretrial order suppressing evidence and defendant cross-appeals those portions of the same order which declined to suppress certain other evidence. We reverse the suppression of evidence and dismiss the cross-appeal.
On the morning of December 26, 1978, dismembered parts of a body were discovered in different trash receptacles in the City of Lake Worth, Florida. Late that morning, police identified the victim as a male individual named Lynn Lizer. The police had been informed that the body was dismembered with an instrument "not unlike an ax." The Lake Worth Police determined Lizer's address to be in the City of West Palm Beach and proceeded there in midafternoon. The immediate purpose of this visit was the determination of next of kin of the deceased and the securing of the premises to protect decedent's valuables and property. The mailbox at the address contained only Lynn Lizer's name. His residence was in one of several apartments behind a T.V. store. Lake Worth Police had notified West Palm Beach Police to meet them. The West Palm Beach Police went to the address and seeing no Lake Worth Police, went into the T.V. store. The owner of the T.V. store identified Lynn Lizer as one of her tenants and upon questioning indicated she was unsure whether Lizer had a roommate but thought he had in the past.
In the meantime, the Lake Worth Police had gone directly to Lizer's apartment. They knocked on the door and defendant, David Scott Clark, answered. The police asked whether they could come in and Clark responded, "I don't know if you can or not." At approximately this time the West Palm Beach Police who had been in the T.V. store arrived at the apartment and stated the landlady had been unaware that anyone was supposed to be there. Clark informed the police he was Lizer's roommate, had been there three weeks, and paid $75 rent. The officers told Clark they were investigating the murder of Lynn Lizer and wanted to come in the apartment for the purpose of determining Lizer's next of kin to inform them of the death. Clark exhibited no emotion at being informed of his roommate's *689 death and dismemberment. Clark then stated, "I guess you can come in."
The officers entered and inquired as to the possible location of information regarding next of kin. At the same time they observed an ax and cutting tools on the living room floor. The ax handle had been recently painted red and red spray paint was observed on the rug near decedent Lizer's bedroom. Clark advised the officers he used the tools in his tree trimming business. One of the officers seized the ax and cutting tools as evidence. The police searched through decedent's bedroom for information regarding next of kin and discovered several letters from relatives. The police did not search defendant Scott's bedroom nor any other portion of the apartment. A short time later, the decision was made to seal the apartment. Later the same day, Clark's jeep was searched pursuant to a written consent signed by him and a yellow bucket seized.
On December 28, two days later, the yellow bucket seized from defendant's jeep was found to contain traces of human blood. The blood type was consistent with decedent's. Later that day, defendant called the Assistant State Attorney in charge of the case for permission to re-enter the apartment for personal reasons. The State Attorney (Ann Vitunac) agreed and asked if defendant would sign a consent to search form for the apartment and another for the jeep. Defendant subsequently signed the written consents. Shortly after going to the apartment, defendant also signed a consent to furnish blood, hair and saliva samples. He accompanied police to the crime lab where he was met by Assistant State Attorney Vitunac. After giving the samples, defendant spoke with Vitunac at the crime lab and made certain statements which were the subject of the later suppression order. Defendant was not read his Miranda rights but was not at this time under arrest. All indications are that he was free to leave and not in custody nor subjected to coercive influences.[1] Vitunac noticed a cut on defendant's leg. She asked how this happened and he stated he had cut himself with his machete. He then agreed to let police test the machete for blood. She also asked him how the yellow pail had gotten into his jeep and he stated he put it there to take his laundry to the laundromat.
Defendant made another statement to police which was alleged to be with consent and in compliance with Miranda. Two more searches of the apartment took place, again allegedly pursuant to written consent. The defendant's jeep was impounded and searched.
Defendant was arrested January 1, 1979, and an indictment for First Degree Murder returned on January 17. Defendant subsequently filed a motion to suppress all evidence obtained by police. After hearing, the trial court granted the motion to suppress as to the ax and testimony concerning the ax, including results of a blood test performed on it. The trial court also suppressed defendant's statements to Attorney Vitunac at the crime lab. All other portions of the motion were denied other than suppression of a certain statement made by defendant in jail which the State does not appeal.
The State here appeals the suppression of the ax, testimony concerning the ax and tests performed on the ax. The State also appeals the suppression of statements made to the State Attorney at the crime lab. Defendant cross-appeals those portions of the order denying the motion.
We deal initially with the defendant's cross-appeal. The State has moved to dismiss the cross-appeal. We conclude we are without jurisdiction and grant the motion. Review of non-final orders in criminal cases is limited by Florida Rule of Appellate Procedure 9.130(a)(2) to those prescribed by Rule 9.140. Rule 9.140(c)(1)(B) in turn authorizes appeal by the State from an order suppressing before trial confessions, *690 admissions or evidence obtained by search and seizure. Rule 9.140(b)(1) provides that a defendant may appeal from final judgments. Defendant thus may appeal denial of a motion to suppress after final judgment assuming it is properly preserved at trial. The Rules do not provide for appeals by defendant from pre-trial orders denying a motion to suppress. Defendant argues that once the State has appealed a pre-trial order of suppression this opens the way for a cross-appeal by defendant of any unfavorable portion of the order. We find no authority directly answering this question.
Defendant argues it is more efficient to determine all suppression issues in a single appeal before trial. This is not necessarily so and in any event would not confer jurisdiction. The trial court may decide to exclude the evidence at trial despite its previous order denying suppression. Alternatively defendant may be acquitted despite admission of the evidence at trial, thus dispensing with any appeal. Obviously, the State must be able to appeal the suppression of evidence before trial because double jeopardy would prevent any effective appeal by the State after final judgment. Defendant, of course, may appeal after judgment all prejudicial error. We therefore hold defendant may not cross-appeal unfavorable rulings in a pre-trial suppression order. The cross-appeal is dismissed and we specifically do not pass on the merits of any portion of the order denying defendant's motion to suppress.

THE AX
We now deal with the issues raised by the State's appeal. The trial court suppressed the ax found in Lynn Lizer's apartment and further suppressed all testimony relating to the ax. We reverse this ruling. The trial court found the initial police intrusion into the decedent's apartment reasonable and proper for two reasons. First, the sealing of a decedent's premises as a measure to protect his property was viewed as sensible. Second, it was deemed legitimate to seal the premises pending application for a search warrant. The trial court suppressed the ax finding its seizure not consistent with either of the two stated purposes. We are unaware of any principle requiring suppression of evidence for inconsistency. We do, however, agree that the entry of police into decedent's apartment was proper and find two additional reasons for that conclusion.
First, the record indicates defendant consented to the entry. Second, it seems reasonable for police to seek entry into decedent's premises to obtain information regarding next of kin. Therefore, once the police were properly inside the apartment the real issue reduced to whether the seizure of the ax was proper under the plain view doctrine. This is unlike the seizure of contraband such as drugs and firearms. While contraband in plain view may be immediately seized because of its nature, items innocent by themselves require probable cause that the item is incriminating evidence. State v. Redding, 362 So.2d 170 (Fla. 2d DCA 1978). Under the circumstances we find such probable cause present in the facts known to the officers at the time of the initial seizure. They observed an ax on the floor of decedent's residence with a recently painted handle and red paint on the rug nearby. The victim had been dismembered by an ax or some similar weapon. Further, defendant's presence at the apartment was unexpected and he exhibited no emotion when informed of the murder and dismemberment of his roommate. Under the totality of the circumstances, we conclude the police had probable cause to seize the ax. The many complex and technical judicial applications of the Fourth Amendment of the United States Constitution and Article I, Section 12, of the Constitution of Florida must not obscure that only "unreasonable searches and seizures" are proscribed. Here, seizure of the ax in plain view was dictated by common sense and probable cause and no constitutional protection of defendant was violated. State v. Ashby, 245 So.2d 225 (Fla. 1971).
*691 In reversing the suppression of the ax, we also reverse the suppression of testimony concerning the ax and a lab test on the ax. The trial court expressed concern that the jury might be confused if the ax was referred to in testimony or lab reports when the ax itself was suppressed. This concern does not now apply in view of our reversal of the suppression of the ax. We specifically do not rule upon any other challenges that might be made at trial to the admissibility of this latter evidence.

STATEMENTS TO ATTORNEY VITUNAC
The State also appeals the suppression of certain statements made by defendant to Assistant State Attorney Vitunac. These statements concerned the yellow bucket found in his jeep and the cut on defendant's leg which he attributed to his machete. The statements were suppressed because the Assistant State Attorney did not advise Clark of his Miranda rights.
The State relies upon Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), for reversal and we agree. Mathiason holds that Miranda warnings need not be given where a person voluntarily appears at the police station, makes a statement and is afterwards free to leave. The warning requirements of Miranda are limited to a suspect actually in custody; neither questioning in the police station nor a coercive atmosphere bring about the requirements of Miranda if the person is not actually in custody and is in fact free to leave. Neither must the police warn a questioned person simply because he is one whom the police suspect. Mathiason strictly limits Miranda to those instances where a person's freedom has been restricted such as to render him in custody.
The evidence presented at the motion to suppress indicates defendant came to the police station voluntarily, talked freely to the Assistant State Attorney, was not under arrest and was free to leave when he wished. The trial court also found an absence of coercive or overbearing conduct by the police. We, therefore, conclude that Clark was not in custody and that under Mathiason, Miranda warnings need not have been given. The portion of the order suppressing these statements is, therefore, reversed.[2]
The case is remanded to the trial court for further proceedings. All applications for review of bail pending before this Court are denied.[3]
REVERSED AND REMANDED.
ANSTEAD and HERSEY, JJ., concur.
NOTES
[1] The trial court found defendant was an alert and intelligent person and that he executed all search consents with full understanding. The court specifically found that no coercive tactics were exerted by police.
[2] There is no evidence that the police intentionally refrained from taking defendant into custody so as to elicit statements from him without his being aware of his Miranda rights.
[3] The defendant has filed various requests for review of bail before this Court and before the Florida Supreme Court while jurisdiction was temporarily before that Court.