503 So.2d 1356 (1987)
James Weaver MOSELY, Appellant,
v.
STATE of Florida, Appellee.
No. BM-175.
District Court of Appeal of Florida, First District.
March 16, 1987.
Michael E. Allen, Public Defender and Kenneth L. Hosford, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Maria Ines Suber, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
James Weaver Mosely seeks reversal of his conviction for possession of marijuana on grounds that the trial judge erred in *1357 denying his motion to suppress statements made to a law enforcement officer. Mosely asserts that his motion to suppress should have been granted on two grounds: 1) the statements were elicited from him at the stationhouse absent his being apprised of his Miranda rights; and 2) that the inculpatory statements by appellant were the product of promises of leniency in prosecution by a sheriff's deputy who was trying to induce Mosely to cooperate as an informant. Appellant was charged by information with possession of more than 20 grams of cannabis and with cultivation of cannabis in violation of Section 893.13, Florida Statutes (1983). Prior to trial appellant moved to suppress statements allegedly made by him in response to an interrogation which took place at the Wakulla County Sheriff's Department. Appellant asserted that the statements were inadmissible because he was not given his Miranda rights and because the statements were made in response to promises of leniency from law enforcement. We reverse.
During the suppression hearing the following facts were revealed. Mosely is an oysterman and shrimper who lives in Panacea and owns a brown Datsun pick-up truck. On June 19, 1985 witnesses reported seeing a brown pick-up truck which was transporting marijuana plants in St. Marks Wildlife Refuge in Panacea.
A sheriff's deputy testified that he had been informed that someone fitting appellant's description with a truck like appellant's was seen in the area of the recovered marijuana plants. The deputy went to appellant's home to talk to him about this matter and since he discovered appellant was not at home, he left his card. When appellant responded to the deputy's calling card by phone, the deputy informed him that he was investigating these marijuana plants and needed to talk to him about it at the station. Two days later appellant came to the sheriff's department at which time the sheriff's deputy told appellant that he was not under arrest at this time but he had recovered some marijuana plants and felt strongly that the plants belonged to appellant. Also according to the deputy appellant was free to go during this conversation. The deputy's testimony revealed that appellant allegedly admitted ownership of the plants and described them as being fourteen plants about thirty inches high. Appellant was not advised of his Miranda rights before this conversation began nor was he arrested when the conversation was concluded.
According to the deputy's testimony, his intent in obtaining Mosely's presence at the stationhouse was to accuse Mosely of owning the marijuana plants, obtain Mosely's confession and then offer a no prosecution bargain in hopes that Mosely would cooperate as a drug sale informant in exchange for the state's leniency. The sheriff's deputy told appellant that he wanted appellant to become an informant for him in a narcotics investigation and in return he would talk to the state attorney's office about not filing charges against appellant pertaining to these marijuana plants. The deputy testified that he told Mosely that, although he was free to go, he could be arrested in the future but "he preferred that Mosely be an informant rather than a defendant". The sheriff's deputy testified that he attempted to work with appellant as an informant but that plan did not work out, because appellant stopped cooperating. Upon counsel's request at the suppression hearing, the deputy revealed the names of drug dealers that appellant had allegedly given him, as proof of appellant's initial cooperation.
Appellant's testimony at the suppression hearing revealed that before he had this discussion with the sheriff's deputy he inquired whether he needed a lawyer present during the questioning, and whether he was being arrested, but that the sheriff's deputy replied by assuring Mosely that he was not being arrested and he would not need a lawyer. During the suppression hearing appellant denied stating that he owned the plants when conversing with the deputy, and asserted that the deputy explained to him that if he didn't claim ownership of the plants the deputy was going to drag him into federal and state court. Appellant further stated that he was never told he had a right to a lawyer or right to *1358 remain silent. Appellant denied describing how many plants there were and how high they were. Appellant admitted that the sheriff's deputy tried to make a deal with him so that he would cooperate as an informant but asserted that he did not agree to cooperate. Appellant further testified that after he went home that day the sheriff's deputy called him twice because he wanted to meet with him so that he could wire him up to make a purchase. Appellant testified that he did not act as requested.
The deputy was recalled by the state and at that time testified that he did not remember appellant having asked whether he needed a lawyer during the interview, but the deputy did not tell Mosely that he did not need one. The trial court denied appellant's motion to suppress statements, and at a subsequent hearing agreed to hold that had the motion to suppress been granted it would have been dispositive of the case. On January 31, 1986 appellant entered a nolo contendere plea to possession of more than 20 grams of cannabis and at that time expressly reserved the right to appeal the denial of the motion to suppress, and the state agreed to nolle prosse count II of the information. Appellant was adjudicated guilty and sentenced to eighteen months probation on March 31, 1986.
The state argues that because Mosely went voluntarily to the stationhouse in response to the deputy's telephone request, Mosely was not in "custody" as defined in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and therefore the deputy's failure to read Mosely his Miranda rights was not error. We disagree. The facts of this case reveal that Mosely was an individual who had become a definite suspect in a drug investigation before he was initially contacted. He was then informed by a law enforcement officer that his presence was desired at the stationhouse for questioning. Although Mosely arrived voluntarily at the stationhouse for questioning he was without benefit of counsel during an interview initiated by a law enforcement officer who had focused upon Mosely as his prime, and only, suspect. Given this set of circumstances, we find that the State's reliance on Roman v. State, 475 So.2d 1228 (Fla. 1985), cert. denied, ___ U.S. ___, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986) and cases cited within, California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); Drake v. State, 441 So.2d 1079 (Fla. 1983), cert. denied, 466 U.S. 978, 104 S.Ct. 2361, 80 L.Ed.2d 832 (1984), is misplaced.
Not only are these cases, as cited by the state for support, factually distinguished in that they are void of any issue of whether the defendants' inculpatory statements were induced by promises from law enforcement, but in Roman, Mathaison and Drake the State's evidence demonstrated that the defendant's Miranda rights were given. In California v. Beheler, the defendant's companion killed a drug dealer, after which the defendant called the police, making the initial contact. Later that evening, after the police had responded to defendant's call, investigated the crime and retrieved the murder weapon, the defendant voluntarily agreed to accompany police to the stationhouse although the police specifically told him he was not under arrest and did not read him his Miranda rights. Beheler is distinguished in that, unlike the facts of the instant case, Beheler was not the sole suspect of an investigation before his contact with the police, rather he made the initial contact, drawing attention to himself. Also, he raised no issue on appeal that his inculpatory statements were a product of police or state promises.
Here, although as the State contends the entire conversation lasted less than 20 minutes, the record reveals that rather than an "interview" or exchange of information, the conversation consisted of the law enforcement officer trying to intimidate Mosely into acknowledging ownership of the plants so that he would acquiesce and cooperate as an informant in future drug investigations. The deputy testified that his "major goal" in getting Mosely to the station was to obtain a confession from him and develop him as an informant. The deputy and Mosely were alone in the deputy's *1359 office at the Sheriff's Department. The deputy testified that he told Mosely that if Mosely purchased some narcotics for him as an informant he would speak to the State Attorney's Office about not filing charges in reference to Mosely's alleged involvement with the marijuana plant transport incident. Further the record reveals that the deputy repeatedly insisted that the plants belonged to Mosely, against Mosely's denials. And the deputy testified that he told appellant that he could also be charged by the federal people on the Refuge. We find that given these circumstances, prior to the interview at the stationhouse the officer should have informed Mosely of his right to remain silent and his right to presence of counsel and allowed him the opportunity to freely and voluntarily waive both rights.
It is universally accepted that a confession obtained by threat or promise is inadmissible. Bram v. U.S., 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). We find that appellant's inculpatory statements here were very likely obtained by a combination of both. In Fillinger v. State, 349 So.2d 714 (Fla. 2d DCA 1977), cert. denied, 374 So.2d 101 (Fla. 1979), the district court found that an officer's promise to request leniency from the state if the suspect cooperated indicated that the interrogator induced the accused to confess by using language which amounted to a threat or promise of benefit, thereby making the confession untrustworthy. The lower court's denial of appellant's motion to suppress was reversed. "In order for a confession to be admissible, the state has the burden of showing that it was freely and voluntarily given ... It cannot be obtained by any direct or implied promise, however slight." 349 So.2d at 715. Although Fillinger can be factually distinguished because appellant, at the time of this interrogation was already under arrest, had waived the Miranda warning given and confessed to an unrelated crime, we find the following reasoning underlying the court's opinion in that case to be applicable here:
An accused from whom a confession is sought should be free from the influence of either hope or fear, and a confession must be excluded if the totality of the surrounding circumstances were calculated to delude the accused or to exert undue influence over him. 349 So.2d at 716 (emphasis supplied).
See also Thomas v. State, 456 So.2d 454 (Fla. 1984); Brewer v. State, 386 So.2d 232 (Fla. 1980).
We find that appellant was the only suspect in this investigation and was the focus of a precalculated plan designed to get him to the stationhouse, confess and then cooperate as an informant in exchange for leniency in prosecution. We further find that, although appellant was not in custody arising to the level of a formal arrest most often viewed as that which requires a Miranda warning, he was the accused from whom a confession and future cooperation were sought as a result of a plan involving promises of leniency and threats of future prosecution which was formulated before appellant ever got to the station. Given the totality of these circumstances, we find that appellant should have been apprised of his Miranda rights and given an opportunity to waive them. In light of the sheriff's deputy's own testimony at the suppression hearing, we cannot conclude that appellant was free from undue influence while interrogated at the station and therefore the state has failed to prove that his inculpatory statements were freely and voluntarily made.
The lower court's denial of appellant's motion to suppress statements is REVERSED and this case is REMANDED to the trial court with instructions to vacate the judgment and sentence and to dismiss the charges.
SMITH, JOANOS and BARFIELD, JJ., concur.