PER CURIAM.
After a trial by jury, appellant was adjudicated guilty of one count of first degree murder and one count of attempted first degree murder, and sentenced to life imprisonment and to 17 years incarceration, with the sentences to run concurrently. Appellant contends the trial court erred in denying her motion to suppress statements obtained from her during interrogation. We affirm.
The charges stemmed from an incident in which appellant was alleged to have suffocated her two year old daughter by placing her in a plastic trash bag, and to have attempted to suffocate her ten month old daughter in the same manner. She alleged that the statements were not freely and voluntarily given and were obtained from her in violation of her privilege against self incrimination, her right to counsel and her right to be free of unreasonable search and seizure.
The statements in question were given late in the day, approximately a week after the child’s death, and following an early morning polygraph test to which appellant had agreed after signing a “rights” form tailored to polygraph tests. When appellant finished the test, the detective told her she had failed. He testified that appellant then stated, “I’m certainly not going to say I did something if I didn’t and so that’s all I’ll have to say.”
Following the polygraph test, two other detectives met with appellant, who then gave the same story she had given at the time of the crime, i.e., that three masked men had broken into her home and had attempted to kill her children. She left the police station at approximately 12:45 p.m. She returned to the police station (where her roommate was being interviewed) in order to give her roommate a ride back to work following her interview. At approximately 2:30 p.m., appellant was waiting in the police station when a detective asked her to speak with him again. The detective assured her, however, that she was free to leave. She asked to speak with her minister, who was called to the police station. After appellant spoke with the minister, she was again interviewed. Appellant at this point began to change details of her story, and shortly thereafter admitted that she had placed her two children in plastic trash bags. The detectives then wrote her statement and appellant signed portions with which she agreed.
Although appellant signed a waiver form when she voluntarily appeared for her polygraph test, she was not in custody at that time and Miranda warnings were not required. State v. Clark, 384 So.2d 687 (Fla. 4th DCA 1980). Appellant left the police station and came back later of her own volition. When she returned, appellant again was not in custody and was not told that she was under arrest or was not free to go.
In California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1982), the Court held that questioning initiated by police of a suspect who agreed to accompany police officers to the station house is not custodial. The court, relying largely upon its earlier decision in Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), further observed:
In summarily reversing the Oregon Supreme Court decision that Mathiason was in custody for purposes of receiving Mi *1367 randa protection, we stated, “Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a ‘coercive environment.’ ” [Oregon v. Mathiason ], 429 U.S., at 495, 50 L.Ed.2d 714, 97 S.Ct. 711 [at 714]. The police are required to give Miranda warnings only “where there has been such a restriction on a person’s freedom as to render him ‘in custody.’ ” Ibid. Our holding relied on the very practical recognition that “[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime.” Ibid.
[[Image here]]
[We] have explicitly recognized that Miranda warnings are not required “simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.” 429 U.S., at 495, 50 L.Ed.2d 714, 97 S.Ct. 711 [at 714],
California v. Beheler, 463 U.S., at 1124, 1125, 103 S.Ct. 3517, at 3519, 3520, 77 L.Ed.2d 1275.
In Alberti v. Estelle, 524 F.2d 1265 (5th Cir.1975), cert. denied, 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976), the court stated a four factor test for determining whether one is in custody for Miranda purposes. The four factors include: 1) probable cause to arrest; 2) subjective intent of police; 3) subjective belief of the defendant; and 4) focus of the investigation. See also State v. Whitfield, 444 So.2d 1154, 1156, n. 2 (Fla. 2d DCA 1984).
Testimony in the record here indicates that when appellant reappeared at the police station on the afternoon of September 17, 1985 no grounds yet existed for her arrest. She admitted that no one had told her she was under arrest or that she could not leave. As to the focus of the interrogation, the detectives stated they questioned appellant about the inconsistency of her story with evidence found at the crime scene.
In B.L. v. State, 425 So.2d 1178 (Fla. 3d DCA 1983), the court found that all the Alberti factors need not be present to establish a custodial setting, and that a case by case analysis is necessary to determine whether a custodial interrogation occurred. The most significant fact here appears to be that appellant showed a subjective belief that she was not in custody.
Our recent case of Mosely v. State, 503 So.2d 1356 (Fla. 1st DCA 1987), is distinguishable. There we held that, although he appeared voluntarily at the station house in response to the officer’s request, Mosely was entitled to be advised of the Miranda rights prior to questioning. Our holding in Mosely turned upon: (1) the fact that the conversation with the police “consisted of the law enforcement officer trying to intimidate Mosely into acknowledging ownership of the [marijuana] plants so that he would acquiesce and cooperate as an informant in future drug investigations;” and (2) the fact that Mosely’s incul-patory statements “were very likely obtained by a combination of both [threats and promises].” Id. at 1357.
We affirm.
WENTWORTH, WIGGINTON and NIMMONS, JJ., concur.