533 So.2d 297 (1988)
Cefice JENKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 87-2131.
District Court of Appeal of Florida, First District.
October 28, 1988.
Rehearing Denied December 2, 1988.
*298 Leo A. Thomas, of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen., and A.E. Pooser, IV, Asst. Atty. Gen., Tallahassee, for appellee.
WIGGINTON, Judge.
Cefice Jenkins was found guilty as charged of conspiracy to traffic in more than 28 grams of heroin in violation of sections 893.135 and 777.04, Florida Statutes. He was sentenced to the mandatory minimum 25-year term of imprisonment and fined $25,000. He brings his appeal challenging his judgment and sentence on the following bases: (1) The trial court erred in allowing into evidence heroin seized from a coconspirator which was not in any way connected to Jenkins; (2) the trial court erred in allowing testimony regarding the unlawful acts of a third party who was not on trial; (3) the trial court erred in failing to suppress Jenkins' statement; and (4) the trial court erred in sentencing Jenkins to the 25-year mandatory minimum sentence under section 777.04. Although we find that there was no error in applying a mandatory minimum sentence to this case,[1] we reverse Jenkins' judgment of conviction and sentence.
*299 The facts as presented at trial show that based upon information received from a confidential informant, narcotics investigators proceeded to the Pensacola Airport where they observed Vernisa Jones and Lakatter Thompson deplane from an incoming flight. At that time, the women were detained for questioning and during this period Thompson was observed attempting to hide a quantity of "black tar" heroin which later was determined to have a weight of 50.4 grams. According to Thompson's testimony, this heroin was not purchased for Jenkins but for Vernisa Jones.
Jones testified that during 1986 she approached Thompson and asked her to go to Los Angeles to purchase drugs. Jones had lived with Thompson and knew Thompson had been going to Los Angeles to buy drugs. She testified she dialed a long distance number given her by Thompson who was also on the phone when the connection was made. It was Jones' intent to purchase heroin. The State then attempted to elicit further testimony regarding Jones' subsequent trip to Los Angeles, but the trial court excluded it as irrelevant. However, Jones did later testify to the trip and to the fact that she met with the same man Thompson had allegedly dealt with on behalf of Jenkins.
Although the heroin seized by the police was not destined for Jenkins, Thompson testified that she had made approximately 12 to 15 trips to Los Angeles to pick up "black tar" heroin for him in the past. She testified that all of the packages of heroin that she had picked up were about the same size as the one seized.
Thompson's sister, Valerie Thompson, testified that she had known Jenkins for approximately five to six years and, beginning in 1981, had made eight to ten trips to Los Angeles to secure heroin for him. The last time was as early as June 1986.
Subsequent to the arrest of Vernisa Jones and Lakatter Thompson, appellant was questioned at his place of business by Lieutenant Mooneyham of the narcotics squad. Lieutenant Mooneyham identified himself as a police officer and informed Jenkins that he wanted to talk to him informally about his involvement in the heroin business. At the time, Jenkins told Mooneyham that he did in fact distribute heroin but sold only enough "to get by." Over objection, this statement was admitted at trial. Mooneyham maintained that Jenkins was not under arrest at the time of questioning but that he was simply trying to gain more information about the alleged sources of supply who were from California. Mooneyham indicated he was mainly interested, "from a professional standpoint," in the nature of "black tar" heroin since he had never seen it "in the raw" and was curious to know how it was prepared for distribution. On cross-examination, however, Mooneyham did admit that Jenkins was the focus of the narcotics investigation at that point, although he did not convey that fact to Jenkins. Jenkins had earlier filed a motion to suppress his statements made to Mooneyham, which motion was denied by the court.
As his first and fourth points on appeal, Jenkins challenges the trial court's admitting into evidence the heroin seized from Lakatter Thompson and the evidence regarding the unlawful acts of Thompson and Vernisa Jones. He argues that the admission of the heroin served no other purpose than to prejudice appellant and to improperly bolster the credibility of a state witness. We agree. See Hirsch v. State, 279 So.2d 866 (Fla. 1973); Banks v. State, 400 So.2d 188 (Fla. 1st DCA 1981); Armstrong v. State, 377 So.2d 205 (Fla. 2d DCA 1979). Clearly, the only thing the evidence tended to prove was that there had been a conspiracy between Lakatter Thompson and Vernisa Jones to traffic in heroin. Although Jones' testimony corroborated Thompson's testimony regarding the similarity between place, contacts, and type of drugs purchased for her and Thompson's dealings for Jenkins, fundamentally it only proved that Thompson had knowledge of the California contacts and conspired with Jones to purchase the heroin for someone other than Jenkins. This testimony was clearly irrelevant and prejudicial to Jenkins' case.
*300 Similarly, the evidence regarding the unlawful acts of Vernisa Jones and Lakatter Thompson violated the principles of fair play set forth in Hirsch v. State and was irrelevant. As a general rule, evidence of wrongdoing on the part of a third party is inadmissible as irrelevant to a given case. Rolle v. State, 431 So.2d 326 (Fla. 3d DCA 1983); Armstrong v. State; Banks v. State.
Moreover, the State made the evidence a key issue in the case when the prosecutor mentioned it both in his opening statement and closing argument, and called four witnesses to testify concerning it in its case in chief. Thus, notwithstanding its irrelevancy, whatever probative value the testimony may have had was substantially outweighed by the danger of unfair prejudice, confusion of issues, and the misleading of the jury. Section 90.403, Florida Statutes.
Reversible error was also committed when the trial court failed to suppress Jenkins' statements made to Lieutenant Mooneyham on the basis that they were given without Jenkins having received his Miranda warnings. Mosely v. State, 503 So.2d 1356 (Fla. 1st DCA 1987). Although Jenkins was not in custody arising to the level of a formal arrest generally viewed as that which requires a Miranda warning, he was admittedly the prime focus of Mooneyham's investigation. Indeed, during the hearing on the motion to suppress, Mooneyham stated that it had been his intention "to do everything that I could to try to gain enough probable cause to arrest Mr. Jenkins for trafficking in heroin, but at that time I don't know if probable cause existed." Thus, it would appear that the relaxed and informal setting created by Mooneyham in approaching Jenkins in his office was calculated to delude Jenkins into believing that the purpose of Mooneyham's visit was simply professional curiosity. As was the case in Mosely, given these circumstances, Mooneyham should have informed Jenkins of his right to remain silent and his right to presence of counsel, and allowed him the opportunity to freely and voluntarily waive both rights.[2]
For the foregoing reasons, the judgment of conviction and sentence are reversed and the cause is remanded for a new trial.
REVERSED and REMANDED.
JOANOS and BARFIELD, JJ., concur.
NOTES
[1] On this point, Jenkins argues that he was not specifically charged in the information under section 893.135(5), the trafficking conspiracy subsection, but was charged instead under the general conspiracy statute, section 777.04, which provides that the main offense be reduced to a second degree felony. However, the State correctly maintains that section 777.04(3) carves out an exception to the downgrading of the degree of the offense where there is an express provision made by law for the punishment of such conspiracy. The "express provision" for the mandatory minimum sentence of 25 years' imprisonment for conspiracy to traffic in more than 28 grams of heroin is found in sections 893.135(5) and 893.135(1)(c)3. Cf. State v. Niemcow, 505 So.2d 670 (Fla. 5th DCA 1987).

Moreover, rule 3.140(d), Florida Rules of Criminal Procedure, provides that each count of the charging document should cite the applicable statute but that error in such citation should not be a ground for reversal of a conviction if the error did not mislead the defendant to his prejudice. In the instant case, it is clear on the record that Jenkins was not only not misled but was well aware that a conviction would require the mandatory 25-year sentence [Tr. 61-62].
[2] In Mosely it was specifically noted by this Court that although the defendant voluntarily arrived at the station house for questioning, he was without benefit of counsel during an interview "initiated by a law enforcement officer who had focused upon Mosely as his prime, and only suspect." 503 So.2d at 1358.