588 So.2d 17 (1991)
STATE of Florida, Appellant,
v.
Amy ALIOTO, Appellee.
No. 90-1628.
District Court of Appeal of Florida, Fifth District.
October 17, 1991.
Robert A. Butterworth, Atty. Gen., Tallahassee, and James N. Charles, Asst. Atty. Gen., Daytona Beach, for appellant.
Edward L. Scott of Edward L. Scott, P.A., Ocala, for appellee.
GRIFFIN, Judge.
The state appeals an order granting appellee Amy Alioto's motion to suppress statements made by her prior to being given Miranda warnings by the police. We reverse.
A neighbor of Alioto, finding marijuana growing in the back yard of the quadraplex where Alioto lived, pulled up one of the plants and took it to the Ocala police. Marion County Sheriff's deputies, King and Jones, were dispatched to Alioto's residence to investigate. King and Jones approached the unit where Alioto lived with a man named Howard Proctor and saw the marijuana plants growing in pots behind the unit. King knocked on the door... and from this point forward, the deputies' version of what ensued and Alioto's version contrast starkly.
Deputy King testified that Alioto invited him inside and Proctor came out of the bedroom. Alioto then went outside and spoke with Jones while King stayed inside and spoke with Proctor. Jones testified that he asked Alioto whether the plants out back were hers and she said they were and that she had had the plants for at least two weeks.[1] King testified that when he told Proctor they were there about the marijuana growing in the back yard Proctor treated it as if it was "no big deal" and stated it had been growing there about six weeks. At that point, King arrested Proctor. King claimed that when he took Proctor outside, Alioto became very upset and wanted to know why Proctor was being taken to jail. King told her it was for growing marijuana and testified that Alioto blurted out, "Take me. It's my marijuana. It's not his, it's my marijuana. Take me to jail." Based on this admission, King decided to arrest Alioto too.
Alioto testified that King knocked on her door, asked her name, ordered her to "get outside" and then entered her apartment.[2] Alioto testified that Jones then showed her the marijuana plants and she replied she had never seen them before. She explained, "[t]he only ones that I had seen he [Jones] showed me were the ones in my tomato plants... ." She claimed she told Jones that she went out and watered her tomato plants every other day but had never seen the marijuana plants. Alioto then testified that she got upset when she saw *18 Proctor in handcuffs, asked why they were taking him, and said she didn't understand, because she was the one who had brought the tomato plants home. Alioto claimed she had gotten the plants two weeks earlier from Proctor's stepfather. Alioto denied admitting the marijuana was hers and claimed that she didn't feel free to go prior to her arrest. Miranda warnings were not given until Proctor and Alioto were arrested.
In suppressing the pre-Miranda statements of Alioto, the trial court ruled:
2. The Defendants' Motion to suppress statements made prior to Miranda warnings is GRANTED. The Court finds the Defendants were the focus of the investigation; were interrogated by law enforcement officers for the purpose of obtaining incriminating evidence; were entitled to a Miranda warning prior to such questioning. (emphasis added).
The language of this order strongly suggests that in ruling on this motion the court relied principally on the authorities cited by Alioto's counsel, Jenkins v. State, 533 So.2d 297 (Fla. 1st DCA 1988), rev. denied, 542 So.2d 1334 (Fla. 1989) and Mosely v. State, 503 So.2d 1356 (Fla. 1st DCA), rev. denied, 511 So.2d 999 (Fla. 1987). The state relied at the suppression hearing on State v. Whitfield, 444 So.2d 1154 (Fla. 2d DCA 1984). All of these cases either expressly or impliedly rely on a test to determine whether or not a person was in custody for purposes of Miranda warnings that is now obsolete. See, e.g., B.L. v. State, 425 So.2d 1178, 1179 (Fla. 3d DCA 1983). The test involves consideration of (1) probable cause to arrest, (2) subjective intent of the police, (3) subjective belief of the defendant, and (4) the focus of the investigation.[3] Not all four prongs needed to be present for a suspect to be "in custody". 425 So.2d at 1179.
Under the current standard, Miranda warnings must only be given when a reasonable person in the suspect's place would believe he or she were not free to leave.[4]United States v. Long, 866 F.2d 402 (11th Cir.1989); Caso v. State, 524 So.2d 422 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). See also United States v. Bengivenga, 845 F.2d 593 (5th Cir.), cert. denied, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988).
In Caso, the Florida Supreme Court reiterated the position of the United States Supreme Court that Miranda warnings are only required when a person is in custody, engaged in an "inherently coercive custodial interrogation... ." 524 So.2d at 423. The Caso court explained that to be "in custody" meant that a suspect either had to be under "formal arrest", or had to have their freedom of movement restrained to the extent "associated with a formal arrest." Id. The focus is the state of mind of a reasonable person in the suspect's place. Id. at 423-424, (citing Roman v. State, 475 So.2d 1228, 1231 (Fla. 1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986)). See also Riechmann v. State, 581 So.2d 133, 137-138 (Fla. 1991); Gresh v. State, 560 So.2d 1266 (Fla. 1st DCA 1990). A "reasonable person" has been defined as one who is "neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances."[5] 845 F.2d at 596. The test does not involve consideration of whether a defendant was the focus of an investigation.
In Long, the Eleventh Circuit identified three situations in which a reasonable person might believe he or she was not free to leave: if an officer (1) brandished a weapon, (2) touched the suspect, or (3) used *19 language or a tone indicating compliance could be compelled. Questioning at the police station has been found to be "inherently coercive," see, e.g., Roman, 475 So.2d 1228, while questioning at a person's home or place of business is likely to be less so. See Jenkins, 533 So.2d at 300. See also Butler v. State, 544 So.2d 1115 (Fla. 3d DCA 1989).
The order in the instant case indicates that the trial court was led into applying the four-prong analysis rather than the "reasonable person" standard. All of the findings made by the trial court in its order relate to the former test and are not relevant to the current reasonable person test. Accordingly, we remand to the trial court to consider the evidence in light of the reasonable person standard, to resolve the factual disputes pertinent to the current test and, applying this test, to determine whether Alioto was in custody when she made the statements sought to be suppressed.[6]
REVERSED and REMANDED.
HARRIS, J., concurs.
COWART, J., concurs in result without opinion.
NOTES
[1] He also told her that she was free to refuse to speak with him.
[2] Proctor could not recall exactly how the officers got inside, but testified they "told" Alioto, "Will you come out here and speak with him [Jones] ..." and King then entered the apartment.
[3] A close reading of Jenkins suggests that the court went through the four-prong analysis and determined that at least three of the prongs were present (officer testified that he intended to obtain sufficient probable cause to arrest suspect and that suspect was the focus of the unwarned interview).
[4] The abrogation of the four-prong test was confirmed in United States v. Corral-Franco, 848 F.2d 536, 539-542 (5th Cir.1988).
[5] The dissent in Corral-Franco has slightly rephrased this test to be "whether an innocent similarly situated individual would have believed he was not free to go." 848 F.2d at 543.
[6] We acknowledge that the Supreme Court in Caso searched the record for competent substantial evidence that would support the trial court's ruling under the correct theory. The Caso court was not faced with disputed facts as in this case. For a finding that Alioto was in custody to be possible, her testimony would have to be believed and the testimony of the two police officers rejected.