849 So.2d 353 (2003)
Frank Paul CILLO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-4394.
District Court of Appeal of Florida, Second District.
May 7, 2003.
*354 James Marion Moorman, Public Defender, and John C. Fisher, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
OLIVER L. GREEN, Senior Judge.
Frank Paul Cillo appeals his judgments for committing a lewd, lascivious or indecent act on a child less than sixteen years of age. He argues that the trial court erred in denying the motion to suppress his confession because the confession was obtained in violation of his Miranda[1] rights. The trial court denied the motion, finding that Mr. Cillo was not in custody when the statements were made and that the statements were voluntary. We affirm.
When reviewing a motion to suppress, the standard of review for the trial court's application of the law to its factual findings is de novo, but a reviewing court must defer to the factual findings of the trial court that are supported by competent, substantial evidence. State v. C.F., 798 So.2d 751 (Fla. 4th DCA 2001). A trial court ruling regarding the voluntary nature of a statement comes to the appellate court with a presumption of correctness, and it cannot be reversed unless it is clearly erroneous. State v. Sawyer, 561 So.2d 278 (Fla. 2d DCA 1990).
In the instant case, Detectives Dominic Iorio and Robert Bang of the Sarasota County Sheriff's Department went to Mr. Cillo's home on the morning of May 10, 2000. Detective Iorio asked Mr. Cillo if he would go to the sheriff's office and talk with them. Mr. Cillo indicated that he would but that he did not have a working vehicle. Detective Iorio said that he would be "glad to provide a ride" to Mr. Cillo, and Mr. Cillo agreed to go with them. Before the interview began, Detective Iorio read Mr. Cillo his Miranda rights. Mr. Cillo responded, "I have a lawyer, but I don't know if I can get ahold of him right now." Detective Iorio then asked Mr. Cillo why he needed a lawyer, because "[y]ou don't even know what we're going to talk about." Thereafter, Mr. Cillo stated that it depended on "what this is all about, whether I'm going to answer any questions without my lawyer."
*355 Mr. Cillo argues that his request for an attorney was unequivocal, and therefore, the detectives should have ended the custodial interrogation at this point. We conclude that Mr. Cillo's request for an attorney was not an unequivocal request for counsel. See Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (holding that the appellant's statement, "maybe I should talk to a lawyer," was not a clear request for counsel); Long v. State, 517 So.2d 664 (Fla.1987) (holding that the statement, "I think I might need an attorney" was an equivocal request for counsel), overruled on other grounds, State v. Owen, 696 So.2d 715 (Fla.1997) ("If the statement is ambiguous or equivocal, then the police have no duty to clarify the suspect's intent, and they may proceed with the interrogation.").
However, even if Mr. Cillo's statement was an unequivocal request for counsel, the detectives were not required to terminate the interview because Mr. Cillo was not being subjected to custodial interrogation. See Edwards v. Arizona, 451 U.S. 477, 485-486, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (holding that absent custodial interrogation, there is no infringement of the Fifth Amendment right to have counsel present even where a suspect requests an attorney, and therefore, there would be no occasion to determine whether there had been a valid waiver of this right).
We agree with the trial court that Mr. Cillo was not in custody and was therefore not subject to custodial interrogation under Edwards. In determining whether a person is in custody for purposes of Miranda, the inquiry is whether the person was taken into custody or significantly deprived of his freedom of action. California v. Beheler, 463 U.S. 1121, 1123, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). A person is not considered to be in custody merely because the questioning took place at the police station or the questioned person is one whom the police suspect. Id. at 1125, 103 S.Ct. 3517.
In Ramirez v. State, 739 So.2d 568, 574 (Fla.1999), the Florida Supreme Court adopted the following four-factor test to determine whether a person is in custody:
(1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; (4) whether the suspect is informed that he or she is free to leave the place of questioning.
Here, Detective Iorio testified that Mr. Cillo went to the sheriff's office voluntarily. Mr. Cillo was never told that he had to go to the sheriff's office, and he never indicated that he did not want to go. During the subsequent interview, Detective Iorio asked Mr. Cillo, "You voluntarily come down here with us today?" Mr. Cillo responded in the affirmative. Therefore, the manner in which the detectives summoned Mr. Cillo for questioning did not suggest that he was "significantly deprived of his freedom of action." Beheler, 463 U.S. at 1123, 103 S.Ct. 3517. See Bedoya v. State, 779 So.2d 574, 579 (Fla. 5th DCA 2001) (holding that appellant was not in custody where police gave him a ride to police station for interview and had incriminating evidence against him).
Regarding the second factor in Ramirez, the questioning in the case at bar took place at the sheriff's office, but there was no evidence suggesting a coercive atmosphere during the interview. Mr. Cillo's interview was recorded on video. This panel observed the videotaped interview with varying reactions. The videotape is of excellent quality, which is probably in part due to the depicted room. The room *356 was the size of a large walk-in closet. The only furniture in the room was three chairs, one of which Mr. Cillo occupied. Mr. Cillo's chair was located in the corner farthest from the door. The atmosphere of the interview was conversational, and no threats or promises were made.
It appears that Mr. Cillo was at all times composed and reasonably responsive in his verbal answers. At no time did he give an appearance of being intimidated or subdued by the presence of the detectives or the questions being asked. At one point during the interview, Detective Iorio leaned towards Mr. Cillo with no visible response from Cillo. On occasions, Mr. Cillo stood up abruptly to retrieve an object from his pocket. There is no visible reaction on the part of either detective to this sudden movement by Mr. Cillo.
Additionally, neither detective raised their voice during the interview. At one point, Mr. Cillo began to yell, but after Detective Iorio asked him to not "disrespect" him, Mr. Cillo calmed down. Consequently, the second factor outlined in Ramirez does not suggest that Mr. Cillo was in custody at the time of the interview.
We note that even if there had been evidence of a coercive atmosphere, the Supreme Court has concluded that a noncustodial situation is not converted to a custodial one simply because, in the absence of any formal arrest or restraint on freedom of movement, the interview took place in a coercive atmosphere. Beheler, 463 U.S. at 1124, 103 S.Ct. 3517. See Davis v. State, 698 So.2d 1182, 1188 (Fla. 1997) (concluding that sole fact that police had warrant for appellant's arrest at the time he went to the police station did not establish that he was in custody). Although Mr. Cillo claims that Detective Bang's chair was blocking the door to the interview room, it appears from the video that it is not. The detectives were able to open and close the door without having to move the chair, and the chair was not moved in front of the door when the detective sat down. However, the detectives' presence and position in the room could have been an obstruction to Mr. Cillo's departure from the room.
In relation to the third Ramirez factor, Detective Iorio did inform Mr. Cillo of the victim's allegations. However, this factor standing alone does not support the conclusion that Mr. Cillo was in custody. See State v. Rodriguez, 785 So.2d 759, 761 (Fla. 3d DCA 2001) (holding that appellee was not in custody when he was questioned at the police station and confronted with incriminating recorded phone calls).
The fourth factor in Ramirez is whether the suspect is informed that he or she is free to leave the place of questioning. In the instant case, before the interview began, Detective Iorio told Mr. Cillo that he was not under arrest and that he could leave at any time. Consequently, the final factor in Ramirez was not indicative of a custodial interrogation. See State v. Scott, 786 So.2d 606 (Fla. 5th DCA 2001) (concluding that appellee was not in custody even though police did not tell her she was free to leave where there was nothing in the record to suggest that her freedom of movement was curtailed in any manner). Additionally, later during the interview Detective Iorio asked Mr. Cillo, "You talking to us now voluntarily?" Mr. Cillo responded in the affirmative.
We conclude that a reasonable person placed in the same position would not believe that "his or her freedom of action was curtailed to a degree associated with actual arrest." Ramirez, 739 So.2d at 573. Based on the totality of the circumstances, in light of the discretion vested in trial judges to weigh all facts in such interviews, we conclude that the State carried *357 its burden in establishing that the interview was not transformed into a custodial interrogation. Accordingly, we affirm Mr. Cillo's judgments and sentences.
Affirmed.
COVINGTON, J., Concurs.
DAVIS, J., Dissents with opinion.
DAVIS, Judge, Dissenting.
After personally reviewing the videotape of the detectives' questioning of Cillo, I must respectfully dissent from the majority's opinion. The legal conclusions that Cillo was not in custody for the purposes of Miranda and that Cillo did in fact waive his Miranda rights are given a de novo review. See Connor v. State, 803 So.2d 598 (Fla.2001); State v. Ernst, 809 So.2d 52 (Fla. 5th DCA 2002). Furthermore, the findings of fact of the trial court are subject to a higher review than the usual "clearly erroneous" test because this court has the opportunity to review the same evidence viewed by the trial court at the suppression hearing. See Thompson v. State, 548 So.2d 198, 204 n. 5 (Fla.1989).
My evaluation of the totality of the circumstances leads me to conclude that this was in fact a custodial interrogation and that Cillo did not knowingly and freely waive his right to counsel prior to the questioning regarding the offenses for which he was subsequently charged.
These legal conclusions are based on the location of the interview; the size of the room; the proximity of the detectives to Cillo, particularly during the questioning regarding the accusations against him; the manner of the questioning; and the intent of the detective to discourage Cillo from calling his attorney, all of which, I believe, would have caused a reasonable person to believe that he was not free to leave but rather was being questioned as though he was under arrest. See Traylor v. State, 596 So.2d 957 (Fla.1992); State v. Alioto, 588 So.2d 17 (Fla. 5th DCA 1991).
I also disagree with the majority's conclusion that Cillo waived his right to have an attorney present during questioning. It is undisputed that when the detective advised Cillo of his right to an attorney, Cillo mentioned that he had an attorney but was unsure if he could be reached. While the majority does not interpret this statement as a request for counsel, I must disagree. Not only do I believe that a fair reading of Cillo's statement reveals it to be a request for counsel, but the detective on the scene clearly believed it to be such, given his immediate response to Cillo, "Why do you need an attorney? You don't even know what we are going to talk about." The detective then attempted to dissuade Cillo from his request. Ignoring Cillo's earlier request, the detective asked Cillo if he would talk with them, and Cillo responded, "Not if I don't know what it's about." The detective responded: "Well, how am I going to explain what this is about unless I can talk to you. You tell me how I can do that without talking to you and I'll do that. I don't think I can. Okay?" When the detective then asked a second time if Cillo would talk with them, Cillo responded that he was not sure but that he may need his attorney depending on what the questions were about. Clearly, Cillo had not been dissuaded from his earlier request. He cannot be said to have waived his right as of that time.
Undeterred, the detective then began to ask Cillo questions regarding a recent criminal mischief incident in which Cillo had been the victim. After four to five minutes of such "safe" questioning, the detective suddenly changed gears and quickly moved his chair to within inches of Cillo's person, resulting in a face-to-face confrontation. He then began to sharply question Cillo regarding the serious sexual *358 accusations that had been made against him. This was the first indication of the real purpose of the interview. Given these facts, I must conclude that despite the detective's numerous attempts to encourage Cillo to waive his right to counsel, Cillo never made a knowing and voluntary waiver of his right to an attorney, but rather acquiesced and responded to the accusations made against him.
I would therefore reverse the trial court's denial of the motion to suppress.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).