OPINION
{¶ 1} Defendant-appellant Steven Miller appeals from his conviction and sentence for rape by threat of force and gross sexual imposition. After being bound over from the Champaign County Juvenile Court to the Court of Common Pleas, Miller was indicted on April 15, 2004, for the following six counts: 1) two counts of rape of a person less than thirteen (13) years of age; 2) two counts of gross sexual imposition, sexual contact by force or with threat of force; and 3) two counts of gross sexual imposition of a minor under thirteen (13) years of age.
 {¶ 2} Following a jury trial on June 16 and 17, 2004, Miller was convicted on all counts. On July 28, 2004, Miller was classified as a sexual predator and sentenced to mandatory life terms on each rape count, those terms to be served consecutively. Miller received seventeen (17) months for each count of gross sexual imposition, sexual contact by force or threat of force. He received four (4) years on each on each count of gross sexual imposition of a minor. All gross sexual imposition counts are to be served concurrently with each other and with the rape counts.
 {¶ 3} In this appeal, Miller submits one assignment of error for review by this Court. Miller contends that the trial erred when it failed to grant his motion to suppress in its entirety resulting in a "fundamentally unfair trial." In particular, Miller asserts that any written or verbal statements he provided while he was in residential foster care at Boys Village in Champaign County should have been suppressed by the trial court. For the following reasons, the judgment of the trial court will be affirmed.
 I {¶ 4} The events that form the basis of Miller's convictions allegedly occurred during the early part of 2001, when Miller was residing with his stepsister, A.P. At the time the offenses occurred, Miller was approximately fifteen (15) years old while the victim, A.P., was eight (8) years old.
 {¶ 5} On July 31, 2001, A.P. informed her mother that she had suffered multiple instances of sexual abuse at the hands of Miller, including vaginal and anal penetration and on several occasions Miller forced A.P. to perform oral sex on him. After investigations were conducted by Champaign County Children's Services and law enforcement, Miller, along with A.P. and the remaining children in the household, were placed in the custody of Children's Services.
 {¶ 6} Due to the sexual nature of these crimes, Miller was placed in Boys Village, a residential facility designed to care for and treat males between the ages of twelve (12) and eighteen (18) who exhibit sexually abusive behavior and/or drug and alcohol problems. While living at Boys Village, Miller allegedly made statements to staff members with respect to the sexual abuse of A.P. Additionally, Miller was required to complete a questionnaire packet which elicited information directly related to the reasons Miller was sent to the camp.
 {¶ 7} Prior to trial, Miller's counsel filed a motion to suppress the report and any statements Miller made to Boys Village staff members. Miller also attempted to suppress statements he made to Urbana Police during an interview at Children's Services on April 29, 2003. The trial court ruled the interview by Urbana Police inadmissible at trial. However, the statements made by Miller to Boys Village staff as well as the answers he provided in the questionnaire were admitted at trial to prove Miller's guilt.
 {¶ 8} Miller asserts that the statements and the report should not have been admitted at trial, and their inclusion at trial played a significant role in his convictions. At trial, Miller's defense to these crimes was a complete denial of any wrongdoing. In his testimony at trial, Miller characterized the incriminating statements and the contents of the questionnaire as simply a story he concocted so that the staff at Boys Village would leave him alone.
 {¶ 9} From his conviction and sentence, Miller appeals.
 II {¶ 10} Miller's sole assignment is a follows:
 {¶ 11} "The trial court erred in failing to grant the entire motion to suppress."
 {¶ 12} In his only assignment of error, Miller contends that the trial court erred when it failed to suppress incriminating statements he made to Boys Village staff as well as the contents of a questionnaire he completed outlining the sexual abuse of his stepsister, A.P. Miller asserts that said evidence should not have been admissible at trial because: 1) Miller was not advised of his right to remain silent; 2) Miller's statements were protected by doctor/patient privilege; 3)Miller was instructed that it was mandatory to fill out the forms; and 4) Miller never intended for the report to be given to Boys Village. We disagree.
 {¶ 13} The following standard governs our review of a trial court's decision regarding a motion to suppress:
 {¶ 14} "We are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard."State v. Retherford (1994), 93 Ohio App.3d 586, 592,639 N.E.2d 498.
 {¶ 15} In determining whether a statement given without the benefit of Miranda warnings should be suppressed, the court must evaluate whether: 1) the defendant was in "custody;" and 2) the defendant was under "interrogation." Rhode Island v. Innis
(1980), 446 U.S. 291, 300-302, 100 S.Ct. 1682. In Califormia v.Beheler (1983), 463 U.S. 1121, 103 S.Ct. 3517, the U.S. Supreme Court held that "although circumstances of each case influence a determination of whether a suspect is `in custody' for the purpose of Miranda protection, the ultimate inquiry is simply whether there is [a] formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Id., paragraph two of the syllabus.
 {¶ 16} After evidence was adduced from both parties, the trial court announced the following at hearing on Miller's motion to suppress:
 {¶ 17} "THE COURT: The Court declines to grant the motion to suppress as to any statements made at Boys Village. The Court finds that the setting at Boys Village is in loco parentis and is not a custodial situation as referred to in criminal interrogation situations.
 {¶ 18} "The Court further finds that [the] Boys Village situation did not involve law enforcement in any way."
 {¶ 19} The term "in loco parentis" has been defined as "the relationship which a person assumes toward a child not his own, holding him out to the world as a member of his family toward whom he owes the discharge of parental duties;" further, "a person standing in loco parentis to a child is one who had put himself in the situation of a lawful parent assuming the obligations incident to the parental relation." In re Estate ofGeorge (1959), 82 Ohio Law Abs. 452, 455.
 {¶ 20} The State contends that Miller was not placed in the care of Boys Village as a result of any criminal charges. Rather, Miller was in the legal custody, as a minor, of a state facility who had been appointed by Champaign County Children's Services to act as foster parents because his biological parents were unable to provide a home for him. The staff at Boys Village was not acting as a law enforcement agency when it questioned Miller concerning the sexually abusive behaviors he had been sent there for exhibiting.
 {¶ 21} In State v. Ferrette (1985), 18 Ohio St.3d 106,480 N.E.2d 399, the Ohio Supreme Court held that where security personnel of the State Lottery Commission who questioned the defendant had no statutory duty to enforce state law nor were they vested with the power to arrest, they were not "law enforcement officers" required to give Miranda warnings at any time before or during their questioning of the defendant in connection with their investigation of criminal activity in cashing altered lottery tickets. While Ferrette concerns different subject matter than the case before us, there is a clear parallel.
 {¶ 22} Children's Services had custody of Miller and sent him to Boys Village who could ostensibly provide treatment for him. The State asserts, and Miller does not dispute, that Boys Village is a foster care facility, whose function is to provide care for minors with special problems. Thus, any information the staff received from Miller was not collected for the purpose of gathering evidence for use at trial. The information was to be used in order to devise a treatment plan for Miller. Moreover, the questionnaire Miller filled out as well as the statements he made to Boys Village staff were not made in the presence of law enforcement officials. The trial court correctly found that Miller was not "in custody" of law enforcement officials for the purposes of Miranda, and thus, the statements and questionnaire were properly admitted at trial.
 {¶ 23} Lastly, Miller asserts that the statements he made to Boys Village staff were made in the context of privilege in therapy. Other than his bare assertion, Miller provides us with no law to support this claim. Louann Harper, a licensed clinical therapist at Boys Village, testified that she interviewed Miller when he first arrived. As part of his intake process, Miller was required to fill out certain paperwork, including the questionnaire. Harper testified that she presented Miller with a consent form that stated that if there is a disclosure of a criminal act or a threat that a crime will occur, she and other staff at Boys Village are required to report that information to Children's Services. Miller signed the consent form and failed to raise the privilege issue in the trial court.
 {¶ 24} R.C. 2317.02(G)(1) confers a privilege barring the testimony of persons licensed under R.C. Chapter 4757, which governs the work of counselors and social workers. The existence of the privilege must be determined preliminarily by the court. Evid.R. 104(A). In order for any reversible error in that regard to occur, the privilege must first be invoked. Failure to invoke the privilege waives it, under the well-established rule that the person entitled to the benefit can always waive it. King v.Barrett (1860), 11 Ohio St. 261. Miller's failure to invoke the privilege therefore waives the privilege and any claim that the court abused its discretion when it permitted testimony concerning privileged communications.
 III {¶ 25} Based upon the foregoing, Miller's single assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Fain, J. and Grady, J., concur.