WALLACE, Senior Circuit Judge,
dissenting:
The question of whether a reasonable person would have felt that he was not at liberty to terminate an interrogation and leave is aimed at resolving “the ultimate inquiry”: “was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.” Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (internal punctuation omitted) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam)). Blanford’s freedom was never restrained to such a degree. While the majority lists a version of the facts corresponding to the factors examined in United States v. Craighead, 539 F.3d 1073 (9th Cir.2008), its conclusion abandons Craig-head’s reasons for considering those factors. Therefore, I dissent.
The majority apparently considers the fact that there were two plainclothes agents with concealed weapons as supporting its finding of custody. I disagree. In Craighead, the court was concerned that a “large number” of law enforcement agents might fill the home so there would be nowhere to retreat, might suggest that an agent would stop the suspect on his way out, or might suggest that the agents were brought to prevent the suspect’s departure. 539 F.3d at 1084-85. The court was also concerned that unholstered weapons show that the suspect’s home is no longer safe from the threat of police force. Id. at 1085. None of the concerns that animated Craighead’s inquiry into the number of armed agents are present here because there were only two agents and they were not displaying their weapons.
The majority also apparently relies on the fact that no one other than Blanford and the agents were in Blanford’s dining room when he answered the agents’ questions. However, Craighead’s inquiry into “whether the suspect was isolated from others” stems from Miranda v. Arizona, 384 U.S. 436, 445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which was concerned about “incommunicado interrogation,” and United States v. Griffin, 922 F.2d 1343, 1352 (8th Cir.1990), which was concerned about “police domination” by the “removal of the suspect from the presence of family, friends, or colleagues who might lend moral support during the questioning.” 539 F.3d at 1086-87. Here, the interview was not incommunicado and the agents did not remove anyone from Blanford’s presence. When Blanford’s wife and children arrived at home in the middle of the interview, Blanford left the table to meet them and it was Blanford who asked his family to go to another room.
The majority’s view that the agents restrained Blanford by threatening him with criminal charges is also at odds with Craighead, which looks into whether “agents restrain[ed] the ability of the suspect to move.” 539 F.3d at 1085. The threats of future criminal charges did not affect Blanford’s ability to move, but instead related to the potential legal consequences he might suffer someday if he did not cooperate. Blanford was never restrained from leaving the dining room table, continuing the interview to another date, or terminating the interview entirely.
That Blanford’s questioning may have taken place in a “coercive environment” is *627 not by itself sufficient to render the questioning custodial. Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). “Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime.” Id. The two agents, who were invited inside Blanford’s home and who allowed Blanford to control the location of the interview and the people present, did not turn Blanford’s home into a police-dominated atmosphere. See Craig-head, 539 F.3d at 1083. Therefore, Blanford was not in custody when he made the statements sought to be suppressed.
I dissent.