935 F.2d 1288
 33 Fed. R. Evid. Serv. 408
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Erineal Elizabeth PASSARELLI, Defendant-Appellant.
 No. 90-5202.
 United States Court of Appeals, Fourth Circuit.
 Argued March 8, 1991.
Decided June 19, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CR-89-19-4)
 George Alan DuBois, Jr., Assistant Federal Public Defender, Raleigh, N.C. (argued), for appellant; William E. Martin, Federal Public Defender, Elizabeth Manton, Assistant Federal Public Defender, Raleigh, N.C., on brief.
 Margaret Person Currin, United States Attorney, Raleigh, N.C. (argued), for appellee; Thomas E. Booth, Sidney Glazer, Criminal Division, United States Department of Justice, Washington, D.C., on brief.
 E.D.N.C.
 Vacated and Remanded.
 Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and SPENCER, United States District Judge for the Eastern District of Virginia, Sitting by Designation.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Elizabeth Passarelli appeals the judgment of the district court entered on the verdict of a jury convicting her of committing and aiding and abetting child abuse, aggravated assault, and involuntary manslaughter in violation of N.C.Gen.Stat. Secs. 14-318.2 and 318.4(a), as assimilated in 18 U.S.C. Sec. 13, and 18 U.S.C. Secs. 2, 113(f), and 1112. She assigns error to the district court's refusal to allow her expert witness to testify because he violated a sequestration order. She also contends that statements she made to the police were improperly admitted into evidence. Because neither she nor her counsel connived or consented to the witness's presence, and because no other circumstances justified the exclusion of the witness, we vacate the district court's judgment and remand for a new trial. We find no error in the admission of her statements.
 
 
 2
 * This case arises out of the death of Erineal Passarelli's daughter, Elysia, in August 1988 from a head injury apparently sustained when Lance Corporal Richard Passarelli, Erineal Passarelli's husband, knocked Elysia into a door frame at their home on a military base. Both the Passarellis had neglected Elysia and used force in disciplining her in the past. Less than a month before Corporal Passarelli inflicted the fatal blow, Mrs. Passarelli hit Elysia in the bathtub and knocked her into a soap dish, causing a bloody nose, split lip, and a bruise on her head. Mrs. Passarelli brought Elysia to the emergency room. The treating physician observed marks on the child's buttocks and stomach, which Mrs. Passarelli admitted inflicting.
 
 
 3
 The emergency room physician suspected child abuse and notified a local social services agency. The agency sent social workers to visit Mrs. Passarelli, and they observed her apathetic attitude towards her daughter. A few weeks later, while Mrs. Passarelli was feeding Elysia, Mrs. Passarelli became angered that Elysia was not eating and hit her on the arm. The blow toppled Elysia, who was sitting on the floor, and she may have hit her head on the floor. That evening, Corporal and Mrs. Passarelli went to a friend's house for several hours. When they returned they discovered that Elysia had wet herself. Corporal Passarelli became enraged and knocked her into the door frame, fracturing her skull, and he continued to beat Elysia with a towel. Later that night, the Passarellis took Elysia to the emergency room. She subsequently went into a coma and died several weeks later.
 
 
 4
 The day after Elysia was admitted to the hospital, military police came to the Passarellis' residence and took them to the provost marshall's office for questioning. Although the police investigator told her that she was free to leave at any time, Mrs. Passarelli stayed there for approximately nine hours and answered his questions. She told him that she had not intervened because she did not want to interfere with her husband's discipline. The investigator testified at trial that she was not emotional during the interview.
 
 
 5
 Corporal Passarelli was charged with child abuse and murder. In preparation for his defense, his lawyers interviewed Mrs. Passarelli in the psychiatric hospital where she was a patient. She made a written statement on the day she was discharged, which was subsequently used at her trial. It included several incriminating statements, including that she had intentionally not intervened in her husband's disciplining and that she had knocked Elysia's head on the floor the night before.
 
 
 6
 The prosecution's case emphasized that Mrs. Passarelli showed a lack of emotion, which was indicative of her intent to harm her daughter. The defense's strategy revolved around the attempt to show that Mrs. Passarelli's severe depression caused her apparent unconcern for the child.
 
 
 7
 The defense intended to use psychiatrist Dr. Billy Royal as their primary witness for testimony about Mrs. Passarelli's emotional state. He examined her several times in preparation for trial, and he interviewed her mother, Mary Ann Moultrie. At the beginning of trial, the district court sequestered all the witnesses, pursuant to Federal Rule of Evidence 615. Dr. Royal nevertheless was in the courtroom for about 20-30 minutes while Mrs. Passarelli's mother, Mrs. Moultrie, testified. When told by the prosecutor that Dr. Royal was in the courtroom during Mrs. Moultrie's testimony, the district court promptly ruled: "He was; he's disqualified." Later the court denied a motion for mistrial because of the violation of rule 615.
 
 
 8
 In the absence of the jury Mrs. Passarelli's counsel proffered Dr. Royal's testimony. His testimony included an explanation of Mrs. Passarelli's history of severe depression to rebut the prosecution's evidence that her lack of emotion was indicative of her intent to harm her child. Moreover, Dr. Royal's proffer showed he believed her self-incriminating statement that she knocked Elysia to the floor, which was made to her husband's defense attorney, was a result of her depressed state, in which she blamed herself for whatever happened and that her illness caused her to agree to just about any scenario suggested to her.
 
 II
 
 9
 Federal Rule of Evidence 615 codifies, with but slight modification, the procedure for segregating witnesses that has long been a part of the common law. See generally United States v. Gibson, 675 F.2d 825, 835-36 (6th Cir.1982). The district court has discretion to determine the sanction for violation of a sequestration order. United States v. Leggett, 326 F.2d 613, 614 (4th Cir.1964). But the court's discretion must be exercised soundly within principles that have long been recognized and remain unchanged by rule 615. In Holder v. United States, 150 U.S. 91, 92 (1893), the Court explained the measures that a district court may take when a witness violates a sequestration order:
 
 
 10
 If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court.
 
 
 11
 "Particular circumstances" justifying exclusion are indications that the witness "remained in court with the 'consent, connivance, procurement or knowledge' of the party seeking his testimony." United States v. Gibson, 675 F.2d at 836 (citations omitted). Neither the common law nor the rule was designed to punish an innocent party for the transgressions of his errant witness. The government has shown no "particular circumstance" that removes this case from the practice the Supreme Court prescribed.
 
 
 12
 It was undisputed in the district court that neither Mrs. Passarelli nor her counsel knew that Dr. Royal was in the courtroom while Mrs. Moultrie testified. Defense counsel may have been negligent for not adequately explaining the sequestration order to Dr. Royal or for failing to notice his presence, and for these omissions counsel could have been fined to vindicate the order. Counsel unsuccessfully argued in the district court that this sanction would be more appropriate than exclusion of Dr. Royal's testimony.
 
 
 13
 The purpose of the rule is "to prevent the possibility of one witness shaping his testimony to match that given by other witnesses at the trial." United States v. Leggett, 326 F.2d at 613. Of course, if such shaping appears, the trial court can properly exercise its discretion to exclude in order to prevent false testimony. In this case the possibility of Dr. Royal shaping his testimony to conform to Mrs. Moultrie's testimony was unlikely, since he had already interviewed Mrs. Moultrie. Comparison of his proffer and her testimony confirms that he was not shaping his testimony by what he heard in court. Dr. Royal's proffer disclosed that his testimony concerned an opinion he had reached as a result of his psychiatric examination of Mrs. Passarelli, a subject quite different from Mrs. Moultrie's narrative.
 
 
 14
 In an effort to bolster its position the prosecutor argues that Dr. Royal's testimony was cumulative to that of another psychiatrist who testified on Mrs. Passarelli's behalf. Ordinarily a defendant confronted with a charge of homicide is not limited to the presentation of one expert, and the government has cited no authority for such a limitation. Moreover, if, as the government contends, Dr. Royal's testimony was cumulative, there was no reason to exclude it, for it is undisputed that the other psychiatrist did not hear Mrs. Moultrie's testimony. In any event, although there were areas of agreement between the two psychiatrists, Dr. Royal's proffer addressed more directly the government's theory that from Mrs. Passarelli's attitude toward her daughter the jury could infer that she intended to harm the child. As defense counsel pointed out in the district court and the proffer demonstrated, Dr. Royal was the defendant's key witness regarding this aspect of the case.
 
 
 15
 As a further ground for exclusion of Dr. Royal the government alleges the defendant's failure to give notice that she intended to call Dr. Royal as a witness. The district court, however, relied upon the violation of the sequestration order when it disqualified Dr. Royal, and we have addressed only that aspect of the case. The issue of notice cannot arise on retrial, for the government was fully advised of Dr. Royal's testimony through the proffer.
 
 
 16
 The district court was not without means to punish violation of the sequestration rule. As the Supreme Court noted, a witness who violates the rule can be cited for contempt, or the court may comment to the jury about the witness's conduct. See Holder v. United States, 150 U.S. at 92. As defense counsel suggested, sanctions could have been imposed on them. In light of the slight probability of harm to the government and the demonstrated harm to Mrs. Passarelli, exclusion of Dr. Royal's testimony was too drastic a sanction to impose on Mrs. Passarelli. Neither the common law, as exemplified by Holder v. United States, 150 U.S. at 92, nor rule 615--which must be applied in harmony with its source, the common law--justify the exclusion of Dr. Royal's testimony.
 
 III
 
 17
 Mrs. Passarelli also appeals the introduction of statements made to the police shortly after Elysia was taken to the emergency room. She maintains that the statements were obtained after an inadequate Miranda warning while she was in custody. Because this issue will arise on retrial, we will address it now.
 
 
 18
 A statement must be excluded if it was obtained when the declarant was in custody as a result of formal arrest or restraint in freedom of movement to "the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983). All sides agree that Mrs. Passarelli received an inadequate Miranda warning. The question, therefore, becomes whether she was in custody.
 
 
 19
 The district court concluded that she was not in custody. We review that factual determination under the clearly erroneous standard. United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir.1985). She had not been arrested, and the district court had ample evidence to find that, from the perspective of a reasonable person, she was not subject to the degree of restraint normally associated with custody. Before conducting the interview, the interrogating officer told her that she was free to go at any time. When the police ended their interrogation, she and her husband returned to their home. The statement is admissible.
 
 
 20
 The judgment is vacated, and the case is remanded for a new trial.
 
 
 21
 VACATED AND REMANDED.