Whitehead, J.
Background
The defendant is charged with the crimes of rape and indecent assault and battery. The charges arise out of an incident which allegedly occurred in Dracut on January 1, 1996 and involved a former girlfriend of the defendant. The defendant has moved to suppress statements concerning the incident, which statements he allegedly made to a Newton, New Hampshire, police officer on March 28,1996. The Court held a hearing on the motion on December 12, 1996. The following constitute the Court’s findings of fact, rulings of law and order on the motion.
Findings of Fact
The defendant, 25 years of age, is a resident of Newton, New Hampshire. On April 13, 1994, Sergeant Mark Marino of the Newton Police Department obtained from the Plaistow District Court (whose jurisdiction covers Newton) a complaint charging the defendant with “harassment.” Sergeant Marino, acting as police prosecutor, also prosecuted the complaint in proceedings before that Court.
On June 16, 1994, the defendant entered a plea of nolo contendere to the harassment charge. The Court found him guilty and imposed a $1,000 fine and a 60-day sentence to the House of Correction. It then suspended both payment of the fine and service of the sentence for a period of two years, on the condition that the defendant be of “good behavior,” and attend a “batterer’s program” entitled “Life-Line.”
Although the Plaistow Court record does not so reflect, other evidence established that the Court also ordered that the defendant abstain from the use of drugs or alcohol; that he not to expose himself to pornography and that he report on a weekly basis to Sergeant Marino at the Newton Police Department during his period of “good behavior.”
On the latter point, Sergeant Marino testified, and the Court accepts his testimony, that the Plaistow District Court Probation Department does not service every case-where a defendant receives a suspended sentence. Rather, there are cases where Sergeant Marino himself performs the role of supervising probation officer. The harassment case was such a case. Thus, it was Sergeant Marino’s duty to meet with the defendant on a weekly basis, ensure the defendant’s compliance with the special conditions of his release, and report to the Court any noncompliance on the defendant’s part. Both Sergeant Marino and the defendant understood that to be so.
Sergeant Marino also testified, and again the Court accepts his testimony, that were the defendant to fail or decline to meet with him as required, Sergeant Marino would feel obliged to report that failure to the Court and to seek the defendant’s commitment to the House of Correction. Again, the defendant was aware that this was so. However, absent process issued by the Court, Sergeant Marino had no power to arrest the defendant for any violation of the terms of his release.
The defendant reported “faithfully” to Sergeant Marino during the period of his release. He would meet with Sergeant Marino each Thursday at the Plaistow Police Station. Sometimes the meetings would consist of a quick encounter in the lobby. At other times, fhe two men would converse in an office within the building.
On March 28,1996, Sergeant Marino had one of his regularly scheduled meetings with the defendant. The meeting occurred in an office inside of the station. It lasted approximately fifteen minutes. There were a half-dozen areas that Sergeant Marino wanted to cover in the discussion between the two men. One of the areas initially discussed was whether the defendant had become re-involved with looking at pornography and smoking marijuana. That discussion was prompted by admissions which the defendant had made at a previous meeting. Another topic discussed was the fact that the defendant had been ejected from the Court-ordered batterer’s program.
At some point, the conversation turned to the incident in Dracut. Approximately one week earlier, Sergeant Marino had learned from the defendant’s roommate that the defendant may have “forced himselF upon his former girlfriend under circumstances that constituted rape. To that end, at the March 28 meeting, Sergeant Marino asked the defendant if he had had “a problem in Dracut." The defendant hung his head and then stated that he had been at a *336 “sleep-over” party in Dracut, which had also been attended by his former girlfriend. He went on to state that at some point during the night he had approached the woman and had sex with her “from the rear,” and she had become upset. The defendant concluded by saying that he felt bad about the incident. At some point thereafter, the meeting ended, and the defendant left the police station.
No Miranda warnings were given at any time during the conversation between Sergeant Marino and the defendant. At all times, the defendant was coherent, rational and responsive. He and Sergeant Marino had been familiar with each other for some time, going back even before the initiation of the harassment charge. The Court concludes that their relationship was a cooperative one, with each seeking to ensure that the defendant comply with the conditions of his release to the best of his ability.[1]
At the time of the March 28 meeting, Sergeant Marino did not see it as his role to investigate the Dracut incident as an independent crime. He had spoken neither to the Dracut Police nor to the former girlfriend. Subsequent to the meeting, he attempted to secure more details from the former girlfriend but found her unwilling to pursue the matter. Accordingly, Sergeant Marino did not seek to surrender the defendant on the terms of his release and, in June of 1994, the defendant’s suspended sentence was terminated.
Finally, in July of 1994, the former girlfriend indicated a willingness to proceed with charges. Sergeant Marino notified the Dracut police at that time. He did so because he believed it to be his duty to report a crime of which he had knowledge.
The Court expressly finds that, at the time of the March 28 meeting, Sergeant Marino questioned the defendant about the Dracut incident solely to determine the extent to which the defendant was in compliance with the terms of his release. He did not question the defendant with an eye toward investigating and reporting to the Dracut police a crime which had occurred within their jurisdiction.
The Court also finds that throughout the March 28 meeting, the defendant was free to leave, in the sense that there was no physical restraint compelling him to stay. The Court infers that the defendant was aware, at least in a general sense, that if he left the meeting against the wishes of Sergeant Marino or if he declined to answer questions about the Dracut incident, his actions might cause Sergeant Marino to seek his surrender on the terms of his release.
Rulings of Law and Discussion
The defendant contends that the failure of Sergeant Marino to provide him with Miranda warnings before inquiring about the Dracut incident renders inadmissible the defendant’s statements about that incident. The Miranda safeguards are applicable to statements given during “custodial interrogations.” In the Miranda decision itself, the Court defined a “custodial” interrogation as follows: “By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Miranda v. Arizona, 384 U.S. 436, 444 (1966) (footnote omitted). Here, it is clear that the defendant had not been “taken into custody” at the time of his interview with Sergeant Marino. However, the defendant asserts that he had been “deprived of his freedom of action in a significant way,” because he had been ordered by the Plaistow Court to meet with Sergeant Marino and because he knew that if he did not appear and speak with Sergeant Marino for as long as the Sergeant deemed necessary, he was subject to surrender on the terms of his release.
The defendant’s argument cannot prevail. This Court is aware of no decision since Miranda in which a Court has extended application of the Miranda safeguards beyond situations where the defendant is physically detained or where an individual in his circumstances would reasonably believe that he would be physically detained if he chose to leave. In fact, the Supreme Court of the United States recently has held that the Miranda safeguards do not apply to a situation such as that presented here.
In Minnesota v. Murphy, 465 U.S. 420, 429-34 (1994), the Court was presented with a probationer the conditions of whose probation required, among other tilings, that he participate in sex-offender treatment; report to his probation officer as directed; and be truthful with his probation officer “in all matters.” The probationer had met with his supervising officer on a monthly basis for a period of time. At some point, the supervising officer learned that he had abandoned the sex-offender treatment program. She wrote to him and informed him that failure to set up a meeting to discuss the issue would “result in an immediate request for a warrant." A meeting resulted, at which the supervising officer agreed not to surrender the probationer, since he was doing well in other respects.
Two months later, the supervising officer learned that while in counseling, the probationer had admitted to a rape and murder. She wrote to the probationer again and asked him to contact her to discuss a treatment plan for the remainder of the term of his probation. The probationer responded by arranging another meeting.
At the meeting, the supervising officer confronted him with the information that she had acquired and stated that she felt that the information indicated the probationer’s need for continued treatment. The probationer eventually admitted the rape and murder but denied the need for continued treatment. The meeting concluded, and the supervising officer reported the probationer’s admissions to the police.
The probationer ultimately was arrested and charged with murder. He moved to suppress his admissions to the supervising officer, on the grounds, e.g., *337 that the admissions were acquired without giving him Miranda warnings or similar cautions. The Supreme Court upheld the trial court’s denial of the motion to suppress, holding that the probationer was “not ‘in custody1 for purposes of receiving Miranda protection since there was no ‘formal arrest or restraint of movement’ of the degree associated with a formal arrest.” Id. at 430, quoting California v. Beheier, 463 U.S. 1121, 1125 (1983) (per curiam). Rejecting point by point the various arguments in favor of extending the Miranda safeguards to the probationer’s situation, the Court went on to note significant differences between the circumstances which a suspect faces upon formal arrest and those which exist during a probation interview. Ultimately, the Court concluded that no extension of Miranda to probation interviews was warranted. Id at 431-33. In the view of this Court, the Supreme Court’s ruling forecloses relief to the present defendant on the grounds of a “Miranda violation.”
Even where the safeguards of Miranda are not applicable, the burden lies with the Commonwealth to prove beyond a reasonable doubt that incriminating statements made by a defendant were voluntary in nature, ie., that they were the product of a rational intellect and free will. See generally Commonwealth v. Williams, 388 Mass. 846, 851, fn.2 (1983). On the first point, there is no evidence to suggest that the defendant possessed anything other than a rational intellect when he spoke to Sergeant Marino. On the latter point, the defendant argues that, custodial or not, the defendant’s statements were not the product of free will because noncooperation with Sergeant Marino could have subjected him to a probation surrender.
An assessment of the voluntariness of a defendant’s statements must be made in light of all of the circumstances surrounding them. Here, the circumstances are that Sergeant Marino and the defendant had a longstanding familiarity with each other; the defendant had been “faithful” in reporting to Sergeant Marino and cooperative with him in doing his best to conform to the terms of his release; he previously had been candid with Sergeant Marino about other deviations in his behavior; and Sergeant Marino, in turn, had been understanding, indeed almost paternalistic, in helping the defendant make it through his period of release. In essence, then, the relationship was one of mutual cooperation. Against that backdrop, the Court concludes beyond a reasonable doubt that the defendant spoke of the Dracut incident to Sergeant Marino not out of feelings of compulsion but because he wished to do so. Accordingly, his statements were voluntary.
ORDER
The Court ORDERS that the defendant’s motion to suppress statements be DENIED.

 During his testimony, the demeanor of Sergeant Marino conveyed the impression of an intelligent, earnest individual who appeared to be concerned for the well-being of both the defendant and the other interested parties in the case.