The State of Ohio has appealed, pursuant to Crim.R. 12(J), from an order of the court of common pleas granting Defendant Nicholas Hoaja's motion to suppress evidence. The motion and order were made in a proceeding in which Hoaja had been charged by indictment with the offense of Burglary, R.C. 2911.12(A)(4).
On November 13, 1997, Centerville Police Sergeant Robert Owsley was dispatched to a residence on Red Coach Drive when a burglar alarm system installed there signaled an intrusion. When Sergeant Owsley arrived at the residence he saw a young male, whom he subsequently determined was Nicholas Hoaja, walking down the street, about a block away. Sergeant Owsley approached Hoaja and asked to speak with him concerning the burglar alarm call.
Hoaja told Sergeant Owsley that friends had dropped him off at a nearby church shortly before and that he was walking to his home, which was in sight. Hoaja told Sergeant Owsley that he wished to help catch anyone who might have broken into the house where the alarm had gone off.
Sergeant Owsley questioned Hoaja further, and noted that Hoaja smelled of alcohol but was not disoriented. Hoaja changed his story under questioning, stating that he'd not been dropped off at the church but was simply walking about the area. At the hearing on Hoaja's motion to suppress, Sergeant Owsley testified:
 "Due to his condition, I thought maybe that the alarm drop we had, especially being at that time of the night, maybe he got to the wrong house and tried to get in the back door of the wrong house so I kind of asked him if maybe he'd been at the wrong house, and he denied that. I told him then that there was a police canine dog on its way to do a track from the house, and we'd set a perimeter up, and that dog would track from the house, and I had a good idea that maybe it would get to him eventually, and at that point in time, he kind of took a pause and told me that he had been at the back of the house. At that point in time then I asked him why he'd been there, and he said that he knew one of the girls that lived at the house from Centerville High School and he thought maybe he might be able to raise her attention and maybe go inside and talk to her for a little while."
Q. "What happened next?"
 A. "We talked a little bit longer, and while we did, his condition got a little bit worse. He seemed to be — appeared more drunk the longer we talked, and I handed him off to Officer Greg Englehardt at that point in time as I was confident then it was he that set the alarm off at the house, not some one else, and I canceled the canine search and turned him over to Ofc. Engelhardt who dealt with it, and I left the area.
Q. What was the outcome of that, if you know,
 A. He gave pretty much the same statement he gave to me to Officer Engelhardt, and then Officer Engelhardt gave him a summons for intoxication and took him over to take him home."
(T. 6-8).
Sergeant Owsley also testified that Hoaja was not in custody or arrest during the time that Sergeant Owsley was speaking with him. (T. 6). Sergeant Owsley also stated that Hoaja was free to leave during that time, until he was turned over to Officer Engelhardt. (T. 9). Sergeant Owsley's interview lasted for about ten minutes. (T. 10). During that time, Hoaja was not advised of his Miranda rights. (T. 11). Two other uniformed officers were present during all or part of that time. (T. 12). None of the officers present told Hoaja that he was free to leave. (T. 13).
On November 17, 1997, Hoaja was called by Centerville Police Detective Mark T. Casey, who had been assigned to investigate the possible burglary at the Red Coach Drive address on November 13. Hoaja agreed to accompany Detective Casey to the offices of the Centerville Police Department for questioning. When they arrived, Detective Casey advised Hoaja of his Miranda rights and Hoaja stated that he understood them. (T. 14-15).
Under questioning by Detective Casey, Hoaja admitted that he went to the Red Coach Drive address to find one of the daughters of the family that lived there. He looked for her bedroom, and when he couldn't locate it he called to her. She didn't answer, so he opened the back patio door to call inside the house and the alarm went off. He then ran away. (T. 17-18).
The trial court granted Hoaja's motion to suppress. Relying on United States v. Bayer (1947), 331 U.S. 532, 91 L.Ed. 1654, ___ S.Ct. ____, the court found that Sergeant Owsley's failure to administer Miranda warnings to Hoaja before he questioned him on November 13 required suppression of the statements that Hoaja made to Sergeant Owsley on that date and to Detective Case on November 17, four days later. The State has appealed from the suppression order, presenting a single assignment of error, which states:
 THE TRIAL COURT ERRED IN SUPPRESSING HOAJA'S STATEMENTS TO THE POLICE WHEN THE FIRST STATEMENT WAS NOT THE PRODUCT OF A CUSTODIAL INTERROGATION, AND THE SECOND STATEMENT WAS MADE AFTER HOAJA'S KNOWING AND VOLUNTARY WAIVER OF HIS RIGHTS.
In United States v. Bayer, supra, a military officer who was suspected of extortion was confined to the psychiatric unit of a military hospital and questioned over a period of two days. The officer confessed. Six months later, after he was released, the officer was questioned again at another location. This time he was warned that what he said could be used against him. The officer repeated his confession. On review of the officer's conviction, the Supreme Court held the first confession inadmissible per McNabb v. United States (1943), 318 U.S. 332,63 S.Ct. 608. 87 L.Ed. 819, because it was coerced. Noting that the second confession was inevitably the fruit of the first, the court nevertheless held that it was admissible because the particular circumstances in which it was given rendered it voluntary.
Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694, was decided nineteen years after Bayer. In place of the actual coercion inquiry used in Bayer and McNabb, Miranda
substituted a presumption of coercion when interrogation takes place while a suspect or accused is in custody. The presumption is rebutted when the required warnings and advice of rights are administered. Since Miranda, the inquiry has shifted to whether the suspect or accused was in custody and whether the prescribed warnings were given. However, that does not modify the rule ofBayer that a subsequent voluntary confession is admissible notwithstanding the inadmissibility of a prior confession.
Defendant Hoaja knowingly and intelligently waived his Fifth Amendment privilege against self-incrimination prior to his interrogation on November 17, according to the formula prescribed by Miranda. Therefore, there is no basis to hold that the statements Hoaja made on that date in response to the questions he was asked are inadmissible.
No Miranda warnings were administered prior to or during Hoaja's earlier encounter with Officer Owsley on November 13, but none were required to preserve Hoaja's Fifth Amendment privilege.
Miranda warnings are required only "when an individual is taken into custody or otherwise deprived of his freedom in any significant way and is subjected to questioning." Id.,384 U.S., at 478. Questioning alone does not trigger the requirement; the subject must also be in custody. State v. Biros (1997), 78 Ohio St.3d 426. Custody does not exist when a reasonable person in the suspect's position would not have felt free to end the interrogation and leave. United States v. Mendenhall (1980),446 U.S. 544.
All of the circumstances surrounding the interrogation must be examined to determine whether a person was then "in custody."Stansberg v. California (1994), 511 U.S. 318. The ultimate inquiry is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.California v. Beheler (1983), 463 U.S. 1121. Whether a suspect's freedom of movement was restrained to such a degree depends on "how a reasonable man in the suspect's position would have understood his situation." Berkermer v. McCarty (1984),468 U.S. 420, 442.
It is somewhat disingenuous to suggest that a person who is being questioned by a police officer would, in that circumstance, feel free to end the interrogation on his own initiative by leaving. After all, flight itself may be a basis for a Terry
stop, as the Supreme Court noted in California v. Hodari D.
(1991), 499 U.S. 621, 623, at n. 1. However, a Terry stop is not an arrest or its functional equivalent. Furthermore, the paramount issue is not whether the subject's calculus is that leaving is inadvisable, but whether "by means of physical force or a show of authority, his freedom of movement is restrained." United Statesv. Mendenhall (1980), 446 U.S., at 553. Examples of that include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Ibid.
Officer Owsley's suggestion that a canine unit would confirm that Hoaja was the intruder who set off the alarm would certainly lead a reasonable person in Hoaja's position to conclude that he was the focus of an investigation, but it does not itself portray an arrest or other formal restraint on freedom of movement. Two other officers were also present, but it does not appear that their actions were threatening. Taken together, these facts do not portray a form of "collar" that requires Miranda warnings. Therefore, the failure to administer those warnings does not render Hoaja's November 13 statements inadmissible.
The assignment of error is sustained. The order of the trial court will be reversed and the case will be remanded for further proceedings.
WOLFF, J. and YOUNG, J., concur.