747 So.2d 1051 (2000)
STATE of Florida, Appellant,
v.
Randy John WILSON, Appellee.
No. 5D98-1372.
District Court of Appeal of Florida, Fifth District.
January 7, 2000.
Robert A. Butterworth, Attorney General, Tallahassee, and Robin A. Compton, Assistant Attorney General, Daytona Beach, for Appellant.
James B. Gibson, Public Defender, and Rosemarie Farrell, Assistant Public Defender, Daytona Beach, for Appellee.
ANTOON, C.J.
Randy John Wilson made inculpatory statements while speaking to an Orange County deputy who was investigating the theft of a fax machine and other office equipment. After he was arrested and charged with committing the theft, Mr. Wilson filed a pretrial motion to suppress his statement on grounds that he was in custody at the time the statements were made yet he was not given the requisite Miranda[1] warnings. The trial court granted the motion. Upon review, we reverse, concluding that Miranda warnings were not required under the facts of this case.
In Caso v. State, 524 So.2d 422 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. *1052 178, 102 L.Ed.2d 147 (1988), our supreme court emphasized that Miranda warnings are required as a protection against the practice of coercing statements from defendants only during custodial interrogation:
In [Miranda], the United States Supreme Court established a procedural safeguard to protect an individual's fifth amendment privilege against compelled self-incrimination from the coercive pressures of custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The procedural safeguard does not, however, apply "outside the context of the inherently coercive custodial interrogations for which it was designed." Roberts v. United States, 445 U.S. 552, 560, 100 S.Ct. 1358, 1364, 63 L.Ed.2d 622 (1980). The police are required to give [Miranda] warnings only when the person is in custody. California v. Beheler, 463 U.S. 1121, 1124, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983). In determining whether a suspect is in custody, "the ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." Id. at 1125, 103 S.Ct. at 3520 (quoting Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)). As this Court and the United States Supreme Court have previously recognized, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Roman v. State, 475 So.2d 1228, 1231 (Fla.1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986)(quoting Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)).
524 So.2d at 423. In short, if a defendant is not in custody, then no Miranda warnings are required.
Ordinarily, appellate courts give deference to a trial court's ruling with regard to whether a defendant is in custody at the time incriminating statements are made. Notwithstanding this deference, reversal is required if the ruling is not supported by competent substantial evidence. See State v. J.Y., 623 So.2d 1232 (Fla. 3d DCA 1993).
Here, the only testimony submitted during the suppression hearing was that of the deputy sheriff to whom Mr. Wilson's statements were made. The Orange County deputy testified that he traveled to Mr. Wilson's home in Osceola County in order to investigate whether Mr. Wilson had attempted to pawn a stolen fax machine in Tampa. When he arrived, Mr. Wilson came to the door and the deputy remained in the yard. The deputy explained to Mr. Wilson that he was investigating the burglary of a fax machine from a business in Orange County. When the deputy suggested that they should try to get the property back to the owner, Mr. Wilson told the deputy where certain other items of stolen property were located. Then, in response to the deputy's statement that he thought the owner just wanted his equipment back, Mr. Wilson explained how he had committed the burglary. The deputy handed Mr. Wilson his business card and said to give him a call in order to "take care of this matter." The deputy then left. All of these events occurred in Osceola County, outside the deputy's jurisdiction.
This testimony fails to reveal any fact that would lead to the conclusion that a reasonable person in Mr. Wilson's position would believe that he was in police custody at the time he made his inculpatory statements. No evidence was adduced indicating that, during his conversation with Mr. Wilson, the deputy used threatening or commanding language; brandished a weapon or made any threatening gestures; or that he touched or approached Mr. Wilson. Furthermore, the entire conversation occurred while Mr. Wilson was standing outside the front door of his house and the deputy was standing in the front yard. Since, at no time did the deputy do anything *1053 or say anything to indicate to Mr. Wilson that he was in police custody, Miranda warnings were not required. Accordingly, we must reverse the trial court's order suppressing Mr. Wilson's statements.
Order REVERSED; cause REMANDED for further proceedings.
W. SHARP, J., concurs.
THOMPSON, J., concurs specially, with opinion.
THOMPSON, J., concurring specially, with opinion.
The only issue that Wilson argued below was that his statements should be suppressed because he was in custody when he was questioned by the police but he was not read his Miranda warnings. I agree with this court that Wilson was not in custody. Unfortunately, Wilson's trial attorney overlooked another theory for suppression which is apparent from the facts.
When Wilson tried to pawn the fax machine, the pawn shop owner used a phone number on the machine to call the owner, who said that the machine had been stolen. Wilson hurriedly left the store leaving behind his Florida Identification Card. The owner of the fax machine identified Wilson as a person who tried to obtain a job with him and he gave law enforcement Wilson's address from the job application. The Orange County deputy went to Wilson's home, identified himself and questioned Wilson about the fax machine. Wilson initially would not speak to the police, but after prompting and statements from the deputy that the victim may not prosecute, Wilson made inculpatory statements.[1]
The facts in Foreman v. State, 400 So.2d 1047 (Fla. 1st DCA 1981), are very similar to those in the instant case. In Foreman, a police officer told the defendant that he did not think the burglary victim would be inclined to prosecute if the defendant returned the property. On appeal, the court ruled the defendant's confession involuntary and that his motion to suppress should have been granted. See also Fullard v. State, 352 So.2d 1271 (Fla. 1st DCA 1977), disapproved of on other grounds, Brown v. State, 376 So.2d 382 (Fla.1979). In Fullard, a detective investigating the theft of a lawn mower told the defendant that if the lawn mower was returned "there won't be any problem." Id. The First District held that the statement implied that if the defendant confessed he would not be prosecuted. In much the same way, the officer in the instant case told Wilson he did not think the victim would be inclined to prosecute if the property was returned. Wilson's attorney did not argue this theory to the trial court. Arguments that are not presented to the trial court are deemed waived on appeal.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[1] At the suppression hearing, the deputy testified:

And then I says [sic], we need to talk about this, let's see if we can get the property back to the owner and maybe we can take care of it that way. At which time he said one piece of equipment had been destroyed and beaten up and was left in the woods and he said the other piece was still at a pawnshop. And at that time I said, well, once you get that one piece of equipment back, I'll get in contact with the owner of the painting company and we'll see what we can work out here because I think all he wants is to get his equipment as soon as possible.
At which time I then asked him, I said, well, tell me how did you break into the building. And he said he broke in through the window, smashed the window out, crawled in and took the fax equipment and left.
So I just wanted to make sure I had my elements of the crime when I was interviewing him, at which time I gave him a business card, I told him to call me. I don't know if I put my pager number on there or not. And I said, call me at the office and we can take care of this matter.