
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  36640-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY JEROME JOHNSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — The State appeals a suppression ruling that fails to heed modern law providing that *Miranda*[1] warnings are required only when a suspect's freedom of action is curtailed to a degree associated with formal arrest.  We reverse and remand.

FACTS AND PROCEDURAL BACKGROUND

Jeffrey Johnson and his wife were appointed guardians of their eight or nine-year-old niece, Lea,[2] in 2009, and she began living with them.  In 2016, Lea made a report at school that she had been molested by Mr. Johnson.  Sergeant Aaron Kanooth and a Child Protective Services' representative met with Lea, who told them about two incidents of

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] "Lea" is a pseudonym.  *See* Gen. Order of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

sexual molestation and other inappropriate conduct by her uncle that began in or about 2014.

Sgt. Kanooth and another Clark County deputy traveled to the Johnson home to speak with Mr. Johnson about the allegations, and Mr. Johnson suggested that they speak in the driveway, which they did. Although Mr. Johnson defended his actions, claiming to have been misunderstood, he made statements that paralleled information Lea had provided. After Mr. Johnson answered the deputies' questions, they arrested him and, at that point, read him *Miranda* warnings. He did not speak to them further. Mr. Johnson was later charged with child molestation in the second degree.

At a CrR 3.5 hearing on the admissibility of Mr. Johnson's statements to the deputies, the trial court expressed concern about their failure to provide Mr. Johnson with *Miranda* warnings before asking him questions that they knew were likely to elicit incriminating responses. The State argued that the relevant issue was not the nature of the questions, but whether, during the questioning, Mr. Johnson's freedom was curtailed. Even defense counsel stated that the issue appeared to be whether there was a custodial interrogation, and "[t]here's very little in the record actually to support that he was in custody." Report of Proceedings at 21.

The trial court explained that its thought process was "whether or not law enforcement can have what some might call carte blanc[he] to interrogate people just because they don't have handcuffs on them," which it viewed as raising an issue distinct

2

from whether Mr. Johnson was in custody. It ruled that the statements would not be admissible for purposes other than impeachment.

It later entered the following findings and conclusions relevant to the appeal:

FINDINGS OF FACT

. . . .

5. Sergeant Kanooth asked to speak to the defendant and the defendant agreed. The defendant came out of his house and directed Sergeant Kanooth and Officer Graves to the front of the house to speak in the driveway.

6. The defendant's *Miranda* warnings were not read at this time.

7. Sergeant Kanooth asked the defendant about the allegations and about conversations that he had with the alleged victim . . . about the allegations.

8. Sergeant Kanooth was asking the defendant questions that were reasonably likely to [e]licit incriminating statements.

9. The defendant was not placed under arrest or placed in handcuffs at any point before or during this conversation with Sergeant Kanooth.

10. The defendant was free to leave and not in custody when the statements were made. . . .

CONCLUSIONS OF LAW

. . . .

2. The defendant was not in custody at the time he made statements to police.

3. The defendant was free to leave during the entirety of his conversation with police.

4. The conversation between police and the defendant was not a custodial interrogation.

5. The defendant's statements were voluntarily made.

6. When police engage in conversation with an individual, and the police officer's questions are likely to elicit incriminating statements, the

police officer must first inform the individual of his rights under *Miranda* prior to any questioning, whether or not the individual is in custody.

7. The officers asked the defendant questions reasonably likely to [e]licit incriminating responses, therefore the police were required to inform the defendant of his rights under *Miranda* prior to any questioning.

8. Because *Miranda* was required and not given, the statements are not admissible in the State's case in chief. . . .

Clerk's Papers at 26-27.

The State's motion for discretionary review was granted by a commissioner of Division Two. Division Two administratively transferred the appeal to Division Three.

ANALYSIS

In *Escobedo v. Illinois*, 378 U.S. 478, 490-91, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964), the United States Supreme Court held that where a criminal investigation "is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent," the accused has been denied the right to counsel guaranteed by the Sixth Amendment to the United States Constitution.

Two years later, and following "spirited legal debate" about *Escobedo*'s ramifications, range, and desirability, the Court decided *Miranda*, in which it affirmed

4

*Escobedo* but also "explore[d] some facets of the problems . . . of applying the privilege against self-incrimination to in-custody interrogation, and to give concrete constitutional guidelines for law enforcement agencies and courts to follow." *Miranda*, 384 U.S. at 441-42. Among the guidelines provided was *Miranda*'s clarification that in speaking in *Escobedo* "of an investigation which had focused on an accused," it meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444 & n.4. With that meaning clarified, it held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444 (emphasis added). It went on to identify the procedural safeguards that courts have enforced in the more than half century since.

In *Berkemer v. McCarty*, 468 U.S. 420, 426, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984), the Supreme Court reviewed the decision of a federal appellate court that had struggled with the admissibility of an accused's pre-arrest confessions. In addition to deciding another issue presented by *Berkemer*, the Supreme Court clarified the scope of "custodial interrogation" for purposes of *Miranda*. *Id.* at 435-36.

Explaining that *Miranda* must be enforced strictly, "but only in those types of situations in which the concerns that powered the decision are implicated," *id.* at 437, the

Supreme Court held that ordinary traffic stops and *Terry*[3] stops are not sufficiently threatening or coercive to constitute custody. *Id.* at 439-40. Instead, the safeguards of *Miranda* "become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Id.* at 440 (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983) (per curiam)). Washington decisions are in accord. *State v. Harris*, 106 Wn.2d 784, 789, 725 P.2d 975 (1986).

When the issue presented by a failure to give *Miranda* warnings is not whether a suspect was in custody but is instead whether he or she was being interrogated, interrogation will include "any words or actions on the part of police . . . that the police should know are reasonably likely to elicit an incriminating response." *State v. Sargent*, 111 Wn.2d 641, 650, 762 P.2d 1127 (1988). Interrogation is not at issue here. Mr. Johnson's statements were clearly made in response to questioning.

Mr. Johnson's appellate lawyer seeks to defend the trial court's ruling on the basis that "[t]oday, citizens have reason to believe that failure to cooperate with the police may be fatal," and that "[i]nteraction with the police now is inherently coercive." Br. of Resp't at 6. We credit counsel with resourcefulness for identifying an argument on appeal, but we are both unpersuaded and powerless to ignore the controlling case law.

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

We reverse and remand for proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:


_____
Lawrence-Berrey, C.J.


_____
Fearing, J.